(Opinion published 51 N. W. Rep. 1056.)

---

/

## EDWARD J. SCHUBERT *vs.* J. R. CLARK Co.

Argued Jan. 12, 1892. Decided April 21, 1892.

**Negligence in the Manufacture of an Article for Sale — Imposing Liability for Injury in Using It.**—If one engaged in the business of manufacturing goods not ordinarily of a dangerous nature, to be put upon the market for sale and for ultimate use, so negligently constructs an article that by reason of such negligence it will obviously endanger the life or limb of any one who may use it, and if the manufacturer, knowing such defects, and knowing that the same are so concealed that they are not likely to be discovered, puts the article in his stock of goods for sale, he is liable for injuries caused by such negligence to one into whose hands the dangerous implement comes for use in the usual course of business, even though there be no contract relation between the latter and the manufacturer.

Appeal by defendant, The J. R. Clark Company, a corporation, from an order of the District Court of Hennepin County, *Hooker*, J., made August 31, 1891, overruling a demurrer to the complaint.

The plaintiff, Edward J. Schubert, by his complaint, stated that defendant was a domestic corporation engaged in the business of manufacturing stepladders of wood for sale to the trade.   That plaintiff was on March 3, 1891, a painter by trade, and employed by W. F. Phelps in painting a store.   That Phelps ordered a retail dealer to deliver to plaintiff at the store a ten-foot stepladder for his use in painting.   That the retail dealer not having such a stepladder in stock, ordered the defendant to deliver it, and it did so; delivered one manufactured by it.   That plaintiff received and used the stepladder in painting the store.   That he weighed one hundred and sixty pounds, and while at work, standing on it with due care, about seven feet above the floor, the stepladder broke, and plaintiff fell, breaking his right arm at the elbow, whereby he lost the use of it.   That the ladder was made of poor, crossgrained, and decayed lumber, and defendant knew, or ought to have known, that it was not made of good, sound, and sufficient lumber, and was not of sufficient strength to sustain plaintiff's weight, and was dangerous to one using it.   That neither the retail dealer nor Phelps nor plaintiff knew it was made of bad lumber, but supposed it was made of good, sound lumber, and was of sufficient strength to sustain plaintiff while using it.   That the ladder was so oiled, painted, and varnished that a person could not discover that it was made of defective material.   That plaintiff was in sound health, twenty-four years old, an expert painter, earning $65 per month, and by reason of the injury has sustained $10,-325 damages, and prayed judgment for that sum with costs.   The complaint contained no direct allegation that the stepladder broke by reason of these defects in the material of which it was made.

The defendant demurred to this complaint on the ground that it did not state facts sufficient to constitute a cause of action.   The trial court overruled the demurrer, saying that if a person negligently manufactures an article intended for use, out of defective material apparent to him, and covers up such defects in the process of manufacture so that they become latent and not discoverable to the user, in the exercise of ordinary care, he is liable to any one using it if injured by reason of such defects; no privity of contract with the manufacturer is necessary to sustain the action.

*Welch, Botkin & Welch,* for appellant.

Defendant admits that a manufacturer of articles dangerous to human life, such as nitroglycerine, gunpowder, poisonous drugs, and the like, is liable for damages occasioned by his negligence in placing them upon the market in an improper or unsafe condition. *Thomas* v. *Winchester,* 6 N. Y. 397; *Wellington* v. *Downer Kerosene Oil Co.,* 104 Mass. 64; *Norton* v. *Sewall,* 106 Mass. 143; *Bishop* v. *Weber,* 139 Mass. 411.

But the case at bar does not fall within the rule laid down in these cases. An ordinary wooden stepladder demands no such care in its manufacture as poisonous drugs, explosive compounds and other dangerous articles, and the liability is proportionately relaxed. *Loop* v. *Litchfield,* 42 N. Y. 351; *Winterbottom* v. *Wright,* 10 Mees. & W. 109; *Longmeid* v. *Holliday,* 6 Exch. 761; *Losee* v. *Clute,* 51 N. Y. 494.

If A. build a wagon and sell it to B., and if he sell it to C., and C. hire it to D., who, in consequence of the gross negligence of A. in building the wagon, is overturned and injured, D. cannot recover damages against A., the builder. *Bailey* v. *Northwestern Ohio Natural Gas Co.* 4 Ohio Cir. Ct. 471; *Barnes* v. *Deliglise,* 78 Wis. 628.

*F. D. Larabee,* for respondent.

The plaintiff cannot recover of his employer W. F. Phelps for his injuries, as the employer owed him only the duty of reasonable care in furnishing to him appliances to be used in his work. An employer uses reasonable care when he buys the appliance of a reliable dealer. The retail dealer has also used reasonable care and is free from responsibility when he buys his articles of a reliable manufacturer, the employer and the dealer having no knowledge of any defect in the thing furnished. Had the plaintiff's employer, Phelps, manufactured the stepladder, and furnished it to the plaintiff in a condition so that the defects could not be discovered by the plaintiff, he would have been liable to him for his injuries, because in the exercise of reasonable care in its manufacture the defects would have been known to him. The right of the plaintiff to recover of some one cannot in reason depend upon whether or not the stepladder was manu-

factured by his employer, or by the defendant in this case.          There
would be no justice or reason in the distinction.

In this case there was no privity of contract between the plaintiff
and the defendant; the stepladder was ordered for the plaintiff, and
delivered to him by the defendant.   It was not seen by his employer
or by the retail dealer.   The defendant knew that it was to be used
by the plaintiff in the manner in which stepladders are used.   The
defendant knew its defects, but the plaintiff did not know them and
could not discover them, and the defendant did not notify the plain-
tiff of the danger.   One who does an illegal or mischievous act which
is liable to prove injurious to others is answerable for the conse-
quences which may directly and naturally result from his conduct,
though he did not intend to do the particular injury which followed.
*Vandenburgh* v. *Truax*, 4 Denio, 464; *McKain* v. *Elkin,* 27 Pittsb.
Leg. J. 169; *McDonald* v. *Snelling,* 14 Allen, 290; *Elkins* v. *McKean,*
79 Pa. St. 493.

DICKINSON, J.   The sufficiency of the complaint as showing a right
to recover against the defendant is here for decision.   The facts of
the case, as shown by the complaint, may be thus stated:

The plaintiff, a house painter, was in the employ of one Phelps.
He was engaged in the work of painting the interior of a certain
building.   His employer, Phelps, as a purchaser, ordered from a re-
tail merchant a new ten-foot stepladder, directing that it be deliv-
ered to the plaintiff at the place where he was at work.   The mer-
chant, not having such a ladder in his stock of goods, ordered the
defendant corporation to deliver such a stepladder to the plaintiff
for his use.   The defendant delivered a ladder to the plaintiff pur-
suant to that order.   This we construe to have been a purchase by
the merchant from the defendant.   The defendant was a manufac-
turer of such goods, and the ladder so delivered had "theretofore"
been manufactured by it, "to be sold for the purpose of being used.
*   *   *"   It was made of poor, crossgrained, and decayed lumber,
and "was so insufficient in strength as to be dangerous to the life
and limb of this plaintiff and whoever might use the same."   It is

alleged that the defendant knew, or ought to have known, such defects and insufficiency. Neither the plaintiff nor his employer nor the merchant from whom the latter ordered the ladder knew such defects, and it was so varnished, oiled, and painted that they could not discover them. The plaintiff, supposing the ladder to have been made of good material, and to be of sufficient strength, proceeded to use it in the performance of his work, and while he was standing on it, seven feet above the floor, it broke without his fault, causing him to fall, and he was thereby injured.

The complaint is defective in not stating, but leaving it only to be inferred, that the ladder broke by reason of the alleged defects; but this fault is not relied upon by the appellant, and we pass it over to consider the real merits of the case.

Let us consider more particularly wherein the defendant is shown to have been guilty of a wrong towards the plaintiff, of which the latter may complain, or what legal duty the defendant owed to the plaintiff, or generally to any one who, in the ordinary course of events, might procure the ladder for use.

There was no contract relation between the plaintiff and the defendant, and hence no contract obligation for the violation of which the plaintiff can recover. Neither the plaintiff nor even his employer was a party to the contract of sale pursuant to which the ladder was delivered to the plaintiff. He did not stand in any relation of privity with the contracting parties,—the retail merchant, who purchased, and the defendant, who sold, the ladder. The contract was not entered into nor executed for his benefit; and, if there was any breach of the contract, the plaintiff has no right of action merely for that. If the defendant is liable, it must be upon the ground that the circumstances under which the ladder was manufactured and delivered were such that the neglect to disclose the existence of the defect was a wrong,—a neglect of a duty recognized by law independent of contract.

Accepting the allegations of the complaint as true, we assume that by reason of the defects complained of the ladder was dangerous to the life or limb of a person using it in the way in which such articles are ordinarily used. If there was any legal duty resting on

the defendant for the breach of which the *plaintiff can complain it will be more apparent if the alleged negligence and consequent injury are brought into close proximity. Hence we will for the present assume that when the ladder was delivered directly to the plaintiff for his use by the defendant the latter knew the concealed defects, and had reason to apprehend that the use of it by the plaintiff, or by any one, would be attended by serious personal injury. It would constitute an actionable wrong for the defendant to thus knowingly and unnecessarily do what it had reason to suppose would result in injury to the plaintiff without the intervention of any fault or neglect on his part or on the part of any other person. If the defendant knowingly delivered such an article for the plaintiff's use, it was his duty to warn him of the danger by disclosing the hidden defects; and neglect of that duty would constitute actionable negligence. Every one may be supposed to understand that such articles are manufactured, sold, and disposed of, with a view to their being used. They are valuable and salable only because of their supposed fitness for use. One who procures such an article, either from a manufacturer or from a retail dealer, ordinarily assumes without inquiry, and without any express warranty, that it is what it appears to be,—a thing intended for actual use; and that it has not been so negligently manufactured that by reason of concealed defects its use will be attended with danger of serious injury. And this must be supposed to be understood by the person who disposes of it; and if, knowing the existence of such defects, he neglects to disclose them, so that the other party may be warned of his danger, such neglect amounts to bad faith. Under such circumstances, silence partakes of the nature of an assurance that the thing has not any such known but concealed dangerous defect. Silence has the effect and the quality of deceit.

The following cases may be cited as instances in which, although there were no contract relations between the parties, a legal duty towards the person injured has been recognized:

*Thomas* v. *Winchester*, 6 N. Y. 397, was an action by a person whose physician had prescribed for her use as a remedy the extract of dandelion, which is a harmless drug. A druggist furnished her what

was supposed to be extract of dandelion, taking it from a jar so labeled by the defendant, the manufacturer. With that label on the jar, the defendant had sold it to a dealer in drugs, from whom the druggist who dispensed it for the plaintiff's use had purchased it. In fact the jar contained extract of belladonna, a poison. The defendant was held liable for injury suffered by the plaintiff from taking the mislabeled poison.

A similar case was that of *Norton* v. *Sewall*, 106 Mass. 143, where the defendant, an apothecary, negligently sold a deadly poison,—laudanum,—in place of a harmless medicine,—rhubarb,— which had been called for. The purchaser procured it to administer to his servant. The servant having died from the effect of the poison, his administrator was allowed to maintain an action for the negligence.

In *Elkins* v. *McKean*, 79 Pa. St. 493, 502, it was considered that, if refiners and vendors of petroleum put on the market for sale for illuminating purposes an oil which they know to be below the legal fire test, they would be liable for a death caused by the explosion of a lamp, even though the oil had been purchased from an intermediate dealer.

In *Wellington* v. *Downer Kerosene Oil Co.*, 104 Mass. 64, the principle of general duty and liability, independent of contract relations, was carried very far. The defendant, knowing naphtha to be an explosive fluid, dangerous for use for illuminating purposes, sold it to a retail dealer, knowing that the latter intended to sell it for such use. The plaintiff purchased from the retail dealer for that purpose, both he and the seller being ignorant of the dangerous nature of the substance. The plaintiff was held entitled to recover for injuries suffered from its use.

The case of *Bishop* v. *Weber*, 139 Mass. 411, (1 N. E. Rep. 154,) was this: The plaintiff attended a ball, for which he had purchased a ticket. The defendant, a caterer, had been employed to provide refreshments for those who should attend the ball. The plaintiff partook of the food furnished by the defendant, which was alleged to have been unwholesome and poisonous. The defendant was held liable.

In *Heaven* v. *Pender*, 11 Q. B. Div. 503, Brett, M. R., laid down in general terms the rule of duty and liability, even in the absence of a contract relation between the parties, sufficiently broad to cover this case, and to hold the defendant to responsibility if the case were as we are assuming it to have been.   While the other justices declined to adopt the general test of liability which was stated by the master of the rolls, they declared that they did not intend to express a doubt as to the principle that any one who leaves a dangerous instrument,—as a gun,—in such a way as to cause danger, or who, without due warning, supplies to others for use an instrument or thing which to his knowledge from its construction or otherwise, is in such a condition as to cause danger, not necessarily incident to the use of such an instrument or thing, is liable for injury caused to others by reason of his negligent act.

In *George* v. *Skivington*, L. R. 5 Exch. Cas. 1, a husband purchased from the defendant a chemical compound as a hair-wash for his wife's use.   It proved to be of a harmful nature, and the wife's health was injured.   She was allowed to maintain an action for the injury.

In this connection should also be cited, as recognizing a duty independent of contract relations, *Moon* v. *Northern Pac. R. Co.*, 46 Minn. 106, (48 N. W. Rep. 679, 680.)   See, also, Cooley, Torts, (2d Ed.) 560.

There is another class of cases in which the element of a contract relation was involved, but in which the conduct of the defendant in concealing or not disclosing a danger which he knew or had reason to apprehend was treated as being in the nature of a fraud or deceit.   See *Marsh* v. *Webber*, 13 Minn. 109, 114, (Gil. 99;) *Jeffrey* v. *Bigelow*, 13 Wend. 518, which were cases of the sale of domestic animals, the vendor knowing that they were infected with a contagious disease.   *French* v. *Vining*, 102 Mass. 132, was a sale of hay to be used by the purchaser for feeding her cow, the seller (defendant) knowing, but not disclosing the fact, that white lead had been spilled upon the hay from which that sold had been taken. The defendant was held liable for the death of the cow, although he had attempted to remove all of the hay that had been injuriously af-

fected, and supposed that he had done so. The opinion in this case gives prominence to the feature of the *wrong* in not disclosing the fact. Of such cases it may be observed that the conduct of the defendant could not be deemed thus *wrongful,* unless it involved the breach of a legal duty. The conclusion must rest upon, and presupposes, the existence of a duty, recognized as such by the law, to disclose the concealed defect, concerning which the other party is presumably ignorant. If there is such a duty, its neglect, followed by injury proximately resulting, constitutes actionable wrong.

We have heretofore assumed that the defendant knew the defects when it delivered the ladder to the plaintiff. But our statement of the case shows that such was not the fact, or at least it does not appear from the complaint that it was so. It seems from the complaint that at some time prior to the ordering and delivery of the article the defendant in the course of its business of manufacturing such goods had negligently constructed this ladder for sale, but not (as we will assume in favor of the defendant) with any specific intention or anticipation as to who might purchase or use it; but only intending that it should go into its stock of goods of that kind, to be sold in the usual course of business, and thus at length come to the hands of some one who would purchase it for actual use. The defendant is to be deemed to have known the fact alleged,—that the dangerous defects were concealed by the application of oil, paint, and varnish,—although we do not understand that this was applied *for the purpose* of concealing such defects. It would seem that after that was done the defendant could not have distinguished this ladder from any other of its manufactured goods of a like kind. If, then, the defendant did not know, and could not have discovered, at the time of delivering this ladder to the plaintiff, that it was defective, there could be no wrong in not then disclosing the existence of defects in this particular article, which were neither known nor discoverable; and the question of the defendant's liability reaches back to the time of manufacturing and putting into its stock of goods for sale an article then known to be dangerously defective, the defects being concealed, and not likely to be discovered, either by any intermediate purchaser standing between the defendant and the per-

son who might procure the ladder for use, or by the latter person. We shall assume, then, that there was no wrongful conduct when the ladder was delivered, but only, if at all, when it was manufactured, and put in the defendant's general stock for sale. In this view of the case, the wrongful conduct of the defendant and the injury resulting therefrom would be somewhat more widely separated in time and in the order of events than in the case as we have heretofore assumed it to have been; but it would not change their real relation as cause and effect, nor so qualify that relation that the law would regard the injury as being so remote from the wrong that for that reason responsibility should cease.

When the defendant manufactured and put the dangerously faulty article in its stock for sale, it is to be deemed to have anticipated that, in the ordinary course of events, it would come to the hands of a purchaser, either directly from the defendant or from some intermediate dealer, for actual use, and with the consequences which actually were suffered. It must have been deemed probable that any intervening dealer would not discover the defect, and that nothing would be likely to occur to avert the danger to which the person who might use the ladder would be subjected by the defendant's negligence. Hence it would be difficult to distinguish such a case in principle from one where the transaction is directly between the wrongdoer, then knowing the danger, and the party who is injured. If any distinction is to be made it must rest upon the grounds of expediency, the arbitrary fixing of a limit to the liability of the wrong-doer. But we consider that in principle the defendant should be held to responsibility for an injury resulting proximately, and without any intervening wrongful agency, from its confessedly negligent act, which was such as to expose another to great bodily harm; and that no reason of policy forbids this. The authorities which have been cited we deem to be sufficient to justify this conclusion, although it is to be admitted that there are others tending to an opposite result.

Order affirmed.

(Opinion published 51 N. W. Rep. 1103.)