## Olds Motor Works v. Shaffer.

(Decided December 1, 1911.)

Appeal from Jefferson Circuit Court.
(Common Pleas, First Division.)

1. Automobiles—Liability of Maker to Third Parties for Defective Construction Resulting in Injury.—An action lies against the manufacturer of an automobile by a third party not privy to the contract, who is injured by defects in the construction of the machine, when it is made to appear that the maker concealed dangerous defects from the purchaser, and the purchaser did not know of them.

2. Same.—Defective construction exists when the rear seat is insufficiently constructed and insecurely attached to the body of the machine as that it will fall off when the machine is running.

3. Same—Ground of Liability to Third Parties.—The general rule is that no liability attaches for injury to third persons who cannot be brought within the scope of the contract, but the manufacturer of certain articles intended for general use owes what may be called a public duty to every person using the articles to so construct them as that they will not be unsafe and dangerous, and for a breach of this duty will be liable to third parties, not in contract but in tort.

4. Same—Liability of Manufacturer—Cases In Which it Exists.— The manufacturer is liable to third parties when he is negligent in the manufacture and sale of an article inherently or intrinsically dangerous to health, limb or life, or when he sells an article for general use which he knows to be dangerous and unsafe and con-

ceals from the purchaser defects in its construction, from which injury might reasonably be expected to happen to persons using it,

5. Same—Liability of Maker—Facts Essential to Show.—Where the article is not inherently or intrinsically dangerous to health or life, a third party seeking to hold the maker liable must show that he knew it was unsafe and dangerous, and either concealed the defects or represented that it was safe and sound.

6. Same—Representations Equivalent to Concealment.—If the maker represents that the article is safe and sound, and the purchaser relied on this representation, it will have the same effect as if the maker concealed the defect by the application of paint or other method.

7. Same—Knowledge of Defect—How Brought Home to Maker.—Although there may not be direct evidence that the maker knew of the defect, yet when it is shown that it could not have escaped his attention, he will be chargeable with notice of it.

8. Automobile.—Is an eminently dangerous article within the meaning of the rule of law holding manufacturers liable for defects in such articles.

9. Same—Notice of Purchaser—Effect of Representations.—When the maker represents that the article is sound and safe, the purchaser is absolved from the duty of seeking to discover defects; and when he relies upon the representations it will take very slight evidence of care on his part to satisfy the requirements of the law.

10. Same—Knowledge of Purchaser Exempts Manufacturer from Liability.—When the purchaser knows that an article is unsafe or dangerous, and with knowledge of this fact invites or permits a third party to use it, the maker will be relieved from liability.

ROBERT L. PAGE, W. W. DAVIES for appellant.

ALEX. F. BARRET, PERCY N. BOOTH for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On June 15, 1909, Gardner and Colston bought an automobile from the appellant, Olds Motor Works. The machine, which had no top, had a rear seat for two, called a rumble seat, that rested on and was fastened to a box, that was also a tool box. On July 30, 1909, Colston took riding with him in his machine Mrs. Tyler, who occupied with him the front seat, and the appellee, Miss Shaffer and her sister, who occupied the rear seat. While going up what is known as the Broadway Hill, in Louisville Kentucky, at a reasonable rate of speed, the box on which the rear seat was fastened, split or cracked, and fell off from the body of the automobile to which it was attached carrying with it the seat, thus throwing appellee and her sister to the ground. The appellee was severely and permanently injured by the fall, and

brought this action against the appellant company to recover damages for the injuries sustained. On the trial, the jury awarded her $4,088.00, and the appellant asks on this appeal a reversal of the judgment entered on the verdict.

The suit was brought against the appellant as the manufacturer of the automobile, upon the ground that when it sold the car to Gardner and Colston, it knew it was defectively constructed, and that the rear seat was unsafe and dangerous for any person to ride in. The petition as amended averred that:

"The said automobile, when it was sold by defendant to said Colston and Gardner, and when the plaintiff's fall took place, was defective, unsafe and imminently dangerous to human life and limb; and it was at both said times unsafe and dangerous for any person to ride in either of said two rear seats. The defendant when it made said sale, knew the said automobile was defective, unsafe and dangerous; knew that it was unsafe and dangerous for any one to ride in either of said two rear seats; and knew that said automobile in the condition aforesaid was imminently dangerous to human life and limb. Notwithstanding such knowledge, the defendant negligently sold said automobile to Colston and Gardner, without notifying or warning either of them it was defective or in an unsafe or dangerous condition. On the contrary, at the time of said sale defendant falsely represented to said buyers that said automobile was safe, and negligently failed to inform, and concealed from, both of them the defects therein, and the unsafe and dangerous condition thereof. * * * * That at no time did the plaintiff or Gardner or Colston know of the defective or unsafe or dangerous condition of said automobile, which caused the said plaintiff's fall and injuries, or know that it was unsafe or dangerous for any person to ride in either of the two rear seats of said automobile, or know that said automobile in the condition set forth in the petition was imminently dangerous to human life or limb."

The answer was a traverse of the averments of the petition.

As it is not seriously insisted—and indeed could not well be—that the damages are excessive, it is not necessary to notice further this feature of the case.

But it is strongly contended by counsel for appellant that (1) if the automobile was unsafe and dangerous,

this fact was known to Gardner and Colston at the time and before appellee was injured, and this knowledge on their part exempted the company from liability to appellee; (2) if the automobile when sold was so constructed as that it was unsafe and dangerous, it was incumbent upon appellee to prove that the condition of the automobile was concealed from the purchasers at the time of the sale; and it is insisted that as the evidence showed that the defects in the machine were known to the purchasers and that there was no concealment of them by the appellant, the jury should have been directed to return a verdict in favor of the appellant. It is also said that the court erred in instructing the jury; and in refusing to grant a new trial upon the ground of newly discovered evidence.

There is much conflict in the evidence upon the question as to whether or not Gardner and Colston knew of the unsafe condition of the machine before the accident, and also upon the question of the concealment of the defects by appellant from purchasers when it sold the machine. But there is convincing evidence that the box upon which the rear seat rested was not only insufficient in itself, but was insecurely fastened to the body or bed of the automobile. It is clearly shown that the body of this box was made out of wood entirely too thin and light for the purpose, and that it was held in place on the body of the machine by four iron pieces fastened to the body of the machine that run up on the inside of the box and to which the box was fastened by very small and short wood screws. The evidence is conclusive that the box should have been fastened to the iron uprights by bolts and that the manner in which it was fastened was unsafe and dangerous in the extreme to persons riding on the rear seat. Indeed it might be said that the box was not attached at all to the iron uprights, and so was liable at any moment when the machine was running, especially up a hill, to tilt over and fall off, as it did when appellee was injured. We may therefore assume at the very outset that the appellant company sold to Gardner and Colston an automobile so defectively constructed as that it was unsafe and dangerous for persons to ride on the rear seat. This fact, however, is not sufficient to authorize a recovery against the company by the appellee who was not a party to the contract it entered into with Gardner and Colston, the purchasers: There was no privity between the appellee and the appel-

lant company. She was a stranger to the contract between it and the purchasers. In cases like this, the liability of the manufacturer to third parties, where any liability exists, is put upon the ground that the manufacturer of certain articles intended for general use, owes what may be called a public duty to every person using the articles, to so construct them as that they will not be unsafe and dangerous, and for a breach of this duty the manufacturer within the limitations we will point out is liable in an action for tort—not contract—to third persons who are injured by his breach of duty. The class of cases, however, in which the maker is liable to third parties is quite limited, the general rule being that no liability attaches for injury to persons who cannot be brought within the scope of the contract. There are, however, well defined exceptions to the rule of non-liability and the courts are singularly agreed as to the law applicable to cases of this character. The rules found in text books and cases defining the liability of the maker of the article to third persons who are injured by its use are stated substantially as follows by all the authorities:

(1) When he is negligent in the manufacture and sale of an article intrinsically or inherently dangerous to health, limb or life; (2) when the maker sells an article for general use which he knows to be imminently dangerous and unsafe and conceals from the purchaser defects in its construction, from which injury might reasonably be expected to happen to those using it. Under the first class fall articles such as poisons or dangerous drugs that are labeled as containing innocent or harmless ingredients; and in this class of cases it is not essential to a recovery by the injured party against the maker that knowledge of his mistake or negligence should be brought home to him. His liability rests upon the broader ground that persons dealing in articles intrinsically and inherently dangerous must use a high degree of care in putting them on the market for the protection of the health and lives of those who may naturally and reasonably be expected to use them. And for his negligence or carelessness alone, without any fraud, deceit or concealment, he may be held accountable in damages to any person injured by their use. Thomas v. Winchester, 6 N. Y., 397, 57 Am. Dec., 455. But in the other class of cases, where the article itself is not inherently or intrinsically dan-

gerous to health or life, a third party seeking to hold the maker liable for injuries suffered by him in the use of the article must show that the maker knew it was unsafe and dangerous, and either concealed the defects or represented that it was safe and sound. But even when this is shown, the maker will not be liable if it is made to appear that the purchaser had knowledge of the defects at and before the third party was injured in using it. Hendrick v. Louisville Elevator Co., 122 Ky., 675; Berger v. Standard Oil Co., 126 Ky., 155; Pullman Co. v. Ward, 143 Ky., 727; Ward v. Pullman Co., 138 Ky., 554; Logan v. C. N. O. & T. P. Ry. Co., 139 Ky., 202; Huset v. J. I. Case Threshing Machine Co., 120 Fed. Rep., 865, 61 L. R. A., 303; Lewis v. Terry, 111 Cal. 39, 31 L. R. A., 220; Schubert v. J. R. Clark Co., 79 Minne., 331, 15 L. R. A., 818; Heizer v. Kingsland Mfg. Co., 110 Mo., 605, 15 L. R. A. 821; Ives v. Welling, 114 Iowa, 476, 54 L. R. A., 854; Tomlinson v. Armour Co., 75 N. J. Law, 748, 19 L. R. A., n. s. 923; Cooley on Torts, 3d ed., vol. 2, p. 1486.

It is obvious that in the case we are considering the liability of the maker falls under the second exception above stated, and putting it upon this ground the contention is made that there is no evidence that the maker knew of the defect in this machine, or concealed it from the purchasers, and for this reason it is said a peremptory instruction should have been given to the jury to find for the appellant. It is true there is no direct evidence that the appellant knew of the defect in the construction of the rear seat but the faulty construction was so patent that no person engaged in its construction could have failed to observe it. We think it may safely be assumed that these machines are made by competent mechanics and according to well arranged plans, and the construction of the box upon which the rear seat rested was so palpably defective that the makers may be charged with actual notice of it. If direct notice had to be brought home to the manufacturer in cases like this; it would defeat in almost every instance the meritorious rule of law charging the maker with liability, as it is seldom that evidence could be obtained tending to show that the maker had actual notice of the defect complained of. But the maker will not be permitted to shield himself from responsibility upon the theory that he did not have notice of the defect in the article when the evidence shows that it was so plain that notice of it could not have escaped his attention. This principle is well stated in

Ward v. Pullman Company, supra. In that case, suit was brought by a third party to recover damages from the Pullman Company for injuries sustained in the use of a defective brake staff on a railroad car made by it. In considering the question as to whether notice of the defect had been brought home to the company, the Court said:

"It was shown by the testimony of three blacksmiths that appellee's blacksmiths were bound to have had hold of the brake staff in welding it and to have known that the brake staff was defectively welded, that the slightest strain upon it would cause it to break, and that any at- tempt of a brakeman to turn it would break the staff and cause him to fall from the car. We think it legitimate to conclude that this defect in the brake was known to ap- pellee's servants by whom the welding was done, that it must also have been discovered while the car was being painted by appellee's servants charged with that work, who inserted in the rift or crack paint to hide its pres- ence and prevent its discovery by others. * * * * We think it further proper to say that the jury from the facts proved would, if properly instructed, have had the right to conclude that appellee, when it sold and delivered the gondola to the railway company for use in its business and by its employees, was bound to have known and did know that its brake staff was imminently dangerous to life and limb.''

We think the evidence that the construction of the rear seat was unsafe and dangerous was sufficient to bring notice of the defect home to the maker, and there- fore the motion for a peremptory instruction based upon the ground that there was a failure of proof upon this point was properly denied.

The argument is further made by counsel for appel- lant that as it is necessary that there should be evidence that the maker concealed the defect, this concealment. means a physical concealment, such as covering up or hiding with paint, or other material, or in some other way the defects, that except for this character of con- cealment would be open and apparent. But, it is not nec- essary that the defect should be concealed from the pur- chaser by the application of paint or some other method. When the maker is chargeable with liability for a defect in a machine, he is guilty of concealing it if he repre- sents to the purchaser that the machine is safe and sound. It is charged in the petition, and there was suf-

It is also urged that a new trial should have been granted upon the ground of newly discovered evidence. It appears that the box in which existed the defects that caused the accident was not present during the trial, but its whereabouts was discovered and it was secured before the motion for a new trial was acted upon. It is now insisted that the presence of this box at the trial would have been material evidence for the appellant, and that it is entitled to a new trial on account of its failure after due diligence to obtain this box before the trial. From the evidence introduced on the trial, and an inspection of the box that was brought to this court and exhibited during the argument, we are inclined to the opinion that its presence on the trial would have been hurtful in place of beneficial to the appellant. But, aside from this, we are convinced that the appellant by the exercise of reasonable diligence could have secured this box before the trial.

Upon the whole case, we find no substantial error to the prejudice of the appellant, and the judgment is affirmed.