FLIES, Appellant, vs. FOX BROTHERS BUICK COMPANY and another, Respondents.

*March 8—June 18, 1928.*

For the appellant there were briefs by *Higbee & Higbee* of La Crosse, and oral argument by *Jesse E. Higbee*.

For the respondent Fox Brothers Buick Company there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, attorneys, and *Philip Snodgrass* of Monroe, of counsel, and oral argument by *Harold M. Wilkie*.

The following opinion was filed April 3, 1928:

OWEN, J. Liability of the Fox Brothers Buick Company is predicated upon the fact that after the car had been in a wreck and greatly damaged the Fox Brothers obtained title to it, took it into their garage, and repaired or rebuilt it so as to restore it to a usable condition, and that when they sold the car to Johnson the brakes were inefficient, in which condition the automobile constituted an instrumentality that was imminently dangerous to life and limb, because of which the Fox Brothers Buick Company became liable to persons sustaining injury by reason of the defective condition of the brakes. The liability of the Fox Brothers Buick Company to the plaintiff under these conditions constitutes the principal question to be considered, but before reaching that question it is necessary to dispose of certain minor questions raised upon the argument.

It is contended by the respondent that the negligence of Johnson, as found by the court, constitutes an intervening cause of injury which, in any event, released the Fox

Brothers Buick Company from any liability to the plaintiff. We shall make no inquiry as to whether the court was justified in changing the answers found by the jury to the questions relating to Johnson's negligence, because we are satisfied that it cannot constitute an intervening cause. The jury acquitted Johnson of any negligence. This finding is sustained by the evidence so far as the management of the car is concerned. It is said that because the statute requires every car to be equipped with efficient brakes, and subjects the owner of the car to a penalty for the absence of such equipment, that the law imposed upon Johnson the duty of having the car so equipped, and that his failure in such respect was negligence as a matter of law constituting an intervening cause relieving the Fox Brothers of any liability to which they might otherwise be subject.

Questions have arisen between connecting carriers as to whether the delivering carrier was liable for injuries sustained by employees of the receiving carrier because of the defective condition of the cars delivered. In *Glynn v. Central R. Co.* 175 Mass. 510, 56 N. E. 698, and *Missouri, K. & T. R. Co. v. Merrill,* 65 Kan. 436, 70 Pac. 358, it was held that the failure of the receiving carrier to make such an inspection of the car as would reveal the defects causing the injury constituted an intervening cause and relieved the delivering carrier of its liability growing out of its failure to inspect. The contrary is held, however, in *Pennsylvania R. Co. v. Snyder,* 55 Ohio St. 342, 45 N. E. 559, and *Moon v. Northern Pac. R. Co.* 46 Minn. 106, 48 N. W. 679, where it was said, in effect, that the intervening event was one which might in the natural course of things be anticipated as not entirely improbable, and the failure of the delivering carrier to make the required inspection constituted a continuing unbroken causal connection in the events leading up to the injury.

In this case the jury found that at the time of the sale Fox Brothers represented to Johnson that the car was equipped with all standard equipments and in proper operating condition for use upon the streets of La Crosse. This representation must have been made by Fox Brothers with the intention of having Johnson rely upon it, in which event they must have anticipated that he would make no inspection concerning the efficiency of the brakes. Their own representations having induced or contributed to Johnson's failure to make the inspection, they cannot claim immunity from the consequences of their own negligence because of Johnson's failure to make an inspection relying upon their representations. Even though Johnson's failure to inspect constituted negligence available to the plaintiff, it did not constitute an intervening cause as to Fox Brothers. *Olds Motor Works v. Shaffer,* 145 Ky. 616, 140 S. W. 1047, 37 L. R. A. N. s. 560; *Pastene v. Adams,* 49 Cal. 87, 90; *Lewis v. Terry,* 111 Cal. 39, 43 Pac. 398; *Rosebrock v. Gen. Elec. Co.* 236 N. Y. 227, 140 N. E. 571.

It is further said that there is no finding that the brakes were inefficient at the time the car was delivered to Johnson. True, the first question inquires whether the car was equipped with efficient brakes at the time of the collision. The jury answered this question "No." It is contended that this is not tantamount to a finding that the brakes were not efficient at the time Johnson took the car from the garage. However, by answer to the fourth question the jury finds that Fox Brothers in the exercise of ordinary care should have known at the time of the delivery of said automobile to the defendant Johnson that the condition of the brakes upon said automobile rendered the same dangerous to life and limb when used on the streets of La Crosse. The jury could not have answered this question as they did unless they were of the opinion that the brakes were inefficient when the car left

the garage in charge of Johnson. A reasonable construction of the verdict taken as a whole is that the brakes were inefficient when the car was delivered to Johnson.

It is further claimed that the verdict does not impute to Fox Brothers knowledge of the inefficient condition of the brakes at the time the car was delivered to Johnson. By the answer to question 3 the jury negatives absolute knowledge of such condition on the part of Fox Brothers, but by the answer to question 4 the jury found that Fox Brothers ought in the exercise of ordinary care to have known at the time of the delivery of said automobile to the defendant Johnson that the condition of the brakes on said automobile rendered the same imminently dangerous to life and limb when used on the streets of La Crosse. The contention is that the question made no inquiry concerning the condition of the brakes, but that the question merely meant, assuming that the brakes were in an inefficient condition, then should Fox Brothers have known that the automobile was imminently dangerous to life and limb when used upon the streets of La Crosse. It is perhaps a little unfortunate that the form of the question leaves room for such a quibble. But whatever casuistry may now be indulged with reference to the construction of the question, there can be no doubt that the question was directed to the knowledge which Fox Brothers had or should have had with reference to the condition of the brakes. There was no issue upon the trial as to whether the operation of an automobile upon the streets of the city of La Crosse was imminently dangerous to life and limb if, as a matter of fact, the brakes were inefficient. The issue litigated was whether, as a matter of fact, the brakes were inefficient and, if inefficient, whether they were so inefficient as to render the automobile dangerous to life and limb. By the fair construction of question 4 the answer of the jury to that question imputes to Fox Brothers knowledge of the fact that the brakes on the automobile were in-

efficient at the time of the delivery thereof to Johnson, and that they were so inefficient as to render the same dangerous to life and limb when the automobile was used on the streets of La Crosse. We say that the answer to the question imputed such knowledge to Fox Brothers. We say this because the law imputes to them knowledge which in the exercise of ordinary care they could obtain. *Wickert v. Wis. Cent. R. Co.* 142 Wis. 375, 125 N. W. 943. We are now brought to the question of the liability of Fox Brothers to the plaintiff.

There is no privity of contract between Fox Brothers and the plaintiff. Any duty owing by Fox Brothers to the plaintiff, therefore, must be imposed upon Fox Brothers as a matter of law. It is a general rule that manufacturers are not liable for damages to persons with whom they have no contractual relations for personal injuries sustained by such persons because of the negligent manufacture of their product. This for the reason, it is said, that an injury to any other person than the owner for whom the article is built and to whom it is delivered cannot ordinarily be foreseen or reasonably anticipated as the probable result of the negligence in its construction. To this an exception has long been recognized with reference to products which are inherently and normally dangerous, such as poisons, contaminated foods, weapons, explosives, and the like—products which are normally destructive in their nature. From an early day the manufacturers of such articles have been held to a very high degree of care to see to it that their poisons are properly labeled, that their foods do not contain poisonous ingredients, and that their explosives and weapons will function in a normal manner. This duty is cast upon manufacturers for the purpose of conserving life and limb.

One of the earliest as well as one of the leading cases announcing that doctrine is *Thomas v. Winchester,* 6 N. Y. 397. For a long time the doctrine was confined to such

articles or products as were normally and inherently dangerous. In the case of *Devlin v. Smith*, 89 N. Y. 470, decided in 1882, the doctrine was extended to a situation where a contractor built a scaffold for a painter. The painter's servants were injured. The contractor was held liable. This on the theory that, although a scaffold is not imminently dangerous to human life, owing to the negligent construction of that particular scaffold it was imminently dangerous and, in its negligent construction, it was held that the contractor breached a duty to make it safe which he owed to all who were likely to use it.

About a year later, in a very similar case before the Court of Appeal in England (*Heaven v. Pender*, L. R. 11 Q. B. D. 503), BRETT, M. R., afterwards Lord ESHER, expressed himself as follows: "Whenever one person supplies goods, or machinery, or the like, for the purpose of their being used by another person under such circumstances that every one of ordinary sense would, if he thought, recognize at once that unless he used ordinary care and skill with regard to the condition of the thing supplied or the mode of supplying it, there will be danger of injury to the person or property of him for whose use the thing is supplied, and who is to use it, a duty arises to use ordinary care and skill as to the condition or manner of supplying such thing." While his views were not adopted by the court, they did evidence the progress of judicial thought upon the question.

In *Schubert v. J. R. Clark Co.* 49 Minn. 331, 51 N. W. 1103, 15 L. R. A. 818, it was held that where a painter purchased from a manufacturer a stepladder, and one of the painter's employees was injured by the breaking of a step caused by the negligence of the manufacturer, the manufacturer was liable to the injured employee. It should be noted that in these cases no new principle was announced. The court simply recognized the very obvious fact that a defective scaffold or stepladder constituted instrumentalities dangerous to life and limb, and that he who constructed a

scaffold or built a stepladder that would not support the weight of those who would use it, brought into existence a menace to life and limb just as certainly as he who mis-labeled poisons. In each case an existing and just principle was simply applied to a new situation. Each court refused to recognize that the principle was circumscribed by the physical subjects to which it had been previously applied.

In a very learned opinion by Judge SANBORN, delivered in 1903, in the case of *Huset v. J. I. Case T. M. Co.* 120 Fed. 865, 61 L. R. A. 303, he refers to the cases of *Devlin v. Smith,* 89 N. Y. 470, and *Schubert v. J. R. Clark Co.* 49 Minn. 331, 51 N. W. 1103, 15 L. R. A. 818, and states that at that time those cases stood alone and were in con-flict with all other cases. Since that time, however, the authority of these cases has received persistent recognition by the courts of this country, and there is now much au-thority for the proposition that one who makes or constructs an instrumentality which is harmless if properly made or constructed, but which is imminently dangerous to life and limb if improperly constructed, owes to all who are likely to come in contact therewith a duty to exercise a high de-gree of care to make such instrumentality safe. The New Jersey court states the rule thus:

"The manufacturer of an article not inherently danger-ous, but which may become dangerous when put to the use for which it is intended, owes to the public the duty of em-ploying care, skill, and diligence in its manufacture and of using reasonable diligence to see that it is reasonably fit for the purpose for which it was intended." *Heckel v. Ford Motor Co.* 101 N. J. L. 385, 128 Atl. 242.

In *Olds Motor Works v. Shaffer,* 145 Ky. 616, 140 S. W. 1047, 37 L. R. A. N. s. 560, it is said:

"There are a great many things in common use that are dangerous, unless they are safely and properly constructed . . . the liability (of the occupants of automobiles) to injury from defects in material or construction is so great as to put upon manufacturers the duty of exercising a high

degree of care in their construction, and equipping them in such a manner as will make them, when used with proper care, reasonably safe."

In a note to be found in 42 A. L. R., beginning on p. 1243, at p. 1250 the author submits the following as a sound rule of law, supported by numerous, although not the weight of, authorities:

"Where, in the exercise of ordinary sense, the seller of an article must know that if it is defective it will be imminently dangerous to persons who he knows will come in contact therewith, a duty rests upon such seller to use ordinary care to ascertain the condition of the article and see that it is safe, especially where, by representations or warranties that the article is safe, he induces the sale; and if he fails to exercise ordinary care to ascertain the safety of the article, and as a result he actually sells it in an imminently dangerous condition, he is liable for personal injuries proximately resulting therefrom, at least, to that class of persons who he knows must come in contact with the article."

While this doctrine may not presently be supported by the weight of authority, there is a decided tendency on the part of courts to recognize its soundness and to apply it to new situations as they arise. Thus, it is said by the Massachusetts court in *Windram Mfg. Co. v. Boston B. Co.* 239 Mass. 123, at p. 125 (131 N. E. 454, 17 A. L. R. 669): "A tendency appears in some recent cases to extend the class of 'inherently dangerous' articles, so as to include not only those that in their ordinary state are dangerous to health and safety, such as poisons and explosives, but also those that are reasonably certain to place life and limb in peril because of negligent preparation," citing many cases.

The doctrine of *Devlin v. Smith,* 89 N. Y. 470, was recognized and applied by this court in *Bright v. Barnett & Record Co.* 88 Wis. 299, 60 N. W. 418, where a contractor building a defective scaffold was held liable to an employee of the company for whom it was built who was killed by

reason of defective material placed in the scaffold. While the doctrine of the *Bright Case* was apparently ignored in *Zieman v. Kieckhefer E. M. Co.* 90 Wis. 497, 63 N. W. 1021, in *Miller v. Mead-Morrison Co.* 166 Wis. 536, 166 N. W. 315, and perhaps in *Kerwin v. Chippewa S. M. Co.* 163 Wis. 428, 157 N. W. 1101, it was recognized and applied in *Coakley v. Prentiss-Wabers Stove Co.* 182 Wis. 94, 195 N. W. 388, where it was held that an oil stove was imminently dangerous to human life because of its negligent or improper construction imposing liability upon the manufacturer.

Notwithstanding the intervening cases, the case of *Bright v. Barnett & Record Co.* 88 Wis. 299, 60 N. W. 418, and *Coakley v. Prentiss-Wabers Stove Co.* 182 Wis. 94, 195 N. W. 388, constituting the first and last consideration by this court of the subject, firmly intrenched in this state the doctrine that a manufacturer who places a manufactured article in trade and commerce not inherently, but, because of its negligent construction, imminently dangerous to life and limb, is liable to one who sustains injuries by reason of such negligent construction.

Was this automobile such an instrumentality? It is generally held that under ordinary circumstances an automobile is not a dangerous instrumentality. Of course this means an automobile properly built and properly equipped, so that it can be kept under the usual control. No one would say that a runaway automobile on the street was not dangerous to the lives of the people thereon. It is just as plain, though perhaps in a less degree, that an automobile lacking equipment necessary to keep it under the control of the driver is also a dangerous instrumentality, not only to the people on the street but to people who may be in the car.

In *MacPherson v. Buick Motor Co.* 217 N. Y. 382, 111 N. E. 1050, it appeared that the manufacturer of an automobile purchased the wheels with which it was equipped

from an independent manufacturer. It was sold to a dealer and by the dealer to a private user. A guest of the private user sustained injury when a wheel collapsed. It was shown that the wheels were not made of sound material, which fact could have been discovered by the manufacturer. It was held that the automobile so equipped was an instrumentality imminently dangerous to life and limb, and the guest sustaining the injury was permitted to recover from the manufacturer of the automobile.

In *Olds Motor Works v. Shaffer,* 145 Ky. 616, 140 S. W. 1047, 37 L. R. A. n. s. 560, it was held that because a rumble seat was defectively fastened on the car a dangerous instrumentality was created, and those who were precipitated from the seat by reason of its giving away while the car was in use were entitled to recover from the manufacturer of the car, although in that case liability was rested upon the knowledge of the defective condition of the seat with which the manufacturer was charged.

In *Heckel v. Ford Motor Co.* 101 N. J. L. 385, 128 Atl. 242, a defective pulley on a tractor was held to give rise to a liability on the part of the manufacturer to one who was injured by the breaking of the tractor pulley.

But independent of these cases, and independent of the verdict of the jury, we should not anticipate denial on the part of any one that the operation of an automobile on a busy city street, equipped with brakes no more efficient than the evidence shows these to have been, constitutes a dangerous instrumentality. While in the rebuilding of this automobile the duty devolving upon the Fox Brothers Buick Company to use due care in its rebuilding to make the same safe for those who might come in contact therewith is analogous to that of a manufacturer, it appears that after completion of the rebuilding of the automobile it was operated for considerable periods of time by different persons, all of whom testified that the brakes were efficient during the pe-

riod of its use by them. Probably upon this evidence it should be held that their duty as manufacturers was discharged so far as it required them to equip the car with efficient brakes, and that if they are liable in this case it is because they failed to perform the duties imposed upon them as sellers of the car.

In *Huset v. J. I. Case T. M. Co.* 120 Fed. 865, 61 L. R. A. 303, it is said: "One who sells or delivers an article which he knows to be imminently dangerous to life or limb to another without notice of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there were any contractual relations between the parties or not," citing *Langridge v. Levy,* 2 Mees. & W. 519, 4 Mees. & W. 337; *Wellington v. Downer K. O. Co.* 104 Mass. 64, 67; *Lewis v. Terry,* 111 Cal. 39, 43 Pac. 398, 31 L. R. A. 220. A requisite of the rule as thus stated is knowledge on the part of the vendor that the article sold is dangerous to life or limb. The jury found that Fox Brothers did not have knowledge of the defective condition of the brakes, but that in the exercise of ordinary care they should have known of their condition. In *Wickert v. Wis. Cent. R. Co.* 142 Wis. 375, 125 N. W. 943, it was said that knowledge of this character is "or may be imputed in a great number of instances, among them where there is a duty to know, and also when a person of ordinary care and prudence under the same or similar circumstances in the exercise of ordinary care ought to have known." The situation of the Fox Brothers falls squarely within the rule by the author of the note in 42 A. L. R. at p. 1250, heretofore quoted. If that rule be sound law, and we believe it is, it is not necessary to say more. We think, however, that it may properly be said that the duty of the seller of a second-hand automobile with reference to exercising care with respect to its equipment so that it may be kept under control and not become a menace to life and

limb, is exactly like that of the manufacturer of a new automobile; and this is especially true where the sale is accompanied with a representation, as the jury found to have been made in this case, that the automobile was equipped with standard equipment. Of course there are many defects chargeable to the manufacturer of an automobile that cannot be discovered by the seller. But deficient brakes is not one of such defects. The Fox Brothers were the keepers of a garage. It was a part of their business to repair automobiles and place them in proper condition to operate. It was an easy matter for them to have discovered these defective brakes. Ordinary care required that they know the condition of these brakes, especially in face of the representation that the car was properly equipped. They should have anticipated that some one was likely to be run down upon the streets of the city of La Crosse in the then condition of the car. The law would show scant consideration for human life if it did not lay this degree of care upon the sellers of this car for the benefit of all who were likely to come in contact therewith.

*By the Court.*—Judgment reversed, and cause remanded with instructions to render judgment in favor of the plaintiff and against the Fox Brothers Buick Company upon the verdict.

A motion for a rehearing was denied, with $25 costs, on June 18, 1928.