ERNESTINE CHAMBERLAIN *v.* BOB MATICK CHEVROLET, INC.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CV 7-6512-7370

Argued June 12—decided November 24, 1967

*Andrew M. Ullman,* of New Haven, for the appellant (plaintiff).

*Edward F. Piazza,* with whom, on the brief, was *Joseph F. Trotta,* both of New Haven, for the appellee (defendant).

Kosicki, J. The complaint in this action, as amended, alleged a breach of warranty by the defendant in the sale of a used automobile and sought relief by rescission or by recovery of damages. The finding of the court, which is not subject to correction except as made of our own motion and hereinafter set out, shows the following facts:   In the

summer of 1965, Christopher Komisarjevsky, age twenty, a student at Union College, wanted to buy a secondhand or used car for himself. He and his mother, Ernestine Chamberlain, the plaintiff in this action, visited between five and ten car lots. Eventually he came to defendant's place of business and talked with Joseph LaValle, a salesman, telling him he wanted to buy a car for $150 or $200. He looked at some automobiles which he did not like and then was shown a 1958 blue Chevrolet and was told that the price was $395. Christopher told the salesman he would be willing to spend about $300. The salesman said he did not know but would talk to the manager and would try and get it for him. The car had a defective master cylinder and Christopher did not drive it on that day.

The following day, Christopher came with his mother and they, with the salesman, went for a ride in the car. The master cylinder had been repaired. It was then discovered that the car pulled to the right. At this time the salesman told Christopher and the plaintiff that they could take the automobile to any mechanic or the Consumers Consultants to have the car examined and if it was found that something further needed to be done and if the defendant could do that work and still sell the car at the indicated price, it would be done. The plaintiff said that she and her son had just so much money available and did not plan to spend more than $300. After some bargaining, the manager finally agreed to sell the car at the price of $325, but stated that since the master cylinder was fixed and the defendant would repair "the pulling to the right," the car was sold "as is," with no guarantee. The salesman told this to the plaintiff and her son.

It was explained to both the plaintiff and her son that "no guarantee" meant that once they drove the car out of the lot, it became their responsibility.

They were also told that at the price of $350 there would have been a guarantee. The "pulling to the right" defect was corrected, and Christopher drove the car and found it satisfactory. A "sales agreement" was signed by the plaintiff. She was given a receipt which is also called "car invoice." This receipt or invoice was stamped clearly on its face in distinct large lettering: "This car not guaranteed." The receipt was for $348.38, which included sales tax, license and title fees. The sales agreement also had a notation that the vehicle was being sold without a guarantee. The transaction took place on August 20, 1965.

Christopher picked up the car about Saturday of that week after it was registered in the plaintiff's name. Thereafter Christopher drove the car to and from work between Meriden and Cheshire. The car developed an oil leak and he took it to his oil dealer, Austin Meacham, for repair. He picked up the car at his oil dealer's place either that same day or the following day. Then he drove the car about 200 miles before going from Cheshire to Boston and from Boston to his school in Schenectady, New York, for a total of approximately 500 miles. When he picked up the car after the oil leak repair no one spoke to him about any defects. He drove the car for a week and a half after the oil repair before he went to school in Schenectady, New York. Christopher sold the car in September, 1966, in Schenectady, New York.

Although the plaintiff made no motion to correct the finding, we have, sua sponte, pursuant to Practice Book § 985, examined the evidence and, in order that the issues presented by the pleadings may be fully understood and to avoid the impression that facts have been found in language of doubtful meaning, we order that the following facts be added to the finding. This correction is needed to place

before us the claim of the plaintiff that the car purchased by her was dangerous and unfit for the purpose for which it was to be used and, consequently, that there was a breach of an implied warranty of fitness. General Statutes §§ 42a-2-313, 42a-2-314, 42a-2-315.

Shortly after the purchase, during the repair of the oil leak on the car, Meacham, the oil dealer, had noticed, and on trial so testified, that the upper and lower ball joints, the idler arm and the rod ends in the front end of the car, and beneath the body, were worn and defective and required replacement for safe operation of the car. No information of this alleged condition was communicated to the plaintiff, to her son, or to the defendant until sometime late in September, 1965, after the plaintiff returned from Europe. On September 29, the plaintiff's husband, stepfather of Christopher, wrote a letter to the defendant claiming rescission and offering to return the automobile, upon return of the money paid, because of the breach of warranty at the time of sale as revealed by the defects described above.

Upon the foregoing facts the court concluded that the car was sold "as is," with no guarantee; that it was operated by the plaintiff's son for over 500 miles; that the car was then sold by the plaintiff's son in September, 1966; that there was no warranty, express or implied, from the defendant to the plaintiff respecting the alleged defective condition of the car; and that the plaintiff had failed to sustain her action by a fair preponderance of the evidence.

In her assignment of errors, the plaintiff claims that the court erred (1) in permitting the introduction into evidence of a waiver of guarantee when such a defense was not pleaded specially in the answer; (2) in reaching the conclusion that since the car was "not guaranteed," the plaintiff had

waived all warranties, expressed or implied; and (3) in rendering judgment for the defendant when the "verdict" was not supported by the law or the evidence. In the last assignment the plaintiff has evidently confused the ultimate finding of a jury on the facts in a criminal case and the finding and conclusions of the court in a civil action. See Practice Book §§ 989 (3), (6) & Form 819 (B) (7), (8). We shall consider this assignment, however, only insofar as it may have reference to the claim that the court erred in the conclusions reached upon the subordinate facts properly found and in rendering judgment for the defendant when the conclusions reached by the court do not support it. Practice Book § 989 (3) & Form 819 (B) (7).

Much of the brief and argument of the plaintiff has been devoted to certain basic assumptions of fact which are not derived from the finding and amount to interpretations of evidence which find no existence either in the plaintiff's claims as to the purpose of the evidence introduced or in the rulings and conclusions of the court.

The plaintiff had filed no motion to correct the finding, and from our examination of the evidence, with the additions we have made of our own motion, we find no reason to disturb it. Practice Book § 985. There was evidence, if credited by the court, to sustain the court's conclusion that the secondhand automobile was sold by the defendant to the plaintiff "as is," with no guarantee attached and no warranty, express or implied. The first assignment of error asserts that the court erroneously permitted the introduction into evidence of a "waiver of guaranty" when such a defense was not pleaded specially in the answer. The second assignment claims error in the court's conclusion that since the car was "not guaranteed" the plaintiff had waived all warranties, express or implied.

All assignments of error must be specific and shall assert directly that the trial court committed error in the respects specified in substantial compliance with Form 819, (A) and (B). Practice Book § 990. This would require that at least the first assignment be accompanied by an exhibit showing the claimed objectionable evidence, the objection and the exception taken, as illustrated in Practice Book, Form 604. Practice Book § 989 (4) & Form 819 (B). This the plaintiff failed to do. The second assignment, attacking the conclusion of the court, incorrectly imports into the finding the statement that the court had concluded that "the plaintiff had waived all warranties expressed or implied." Nowhere in the finding is such conclusion to be found. The finding, simply stated, was that the sale of the car was without any guarantee or warranty. That was a question of fact to be determined by the trial court and, with no challenge of the finding before us, we are in no position to alter the finding without retrying the case. This we cannot do. *Bent* v. *Torell,* 139 Conn. 744, 748.

It is conceded by the plaintiff that no guarantee is involved. The principal claim, however, is that the defendant was liable under an express or implied warranty of fitness under the provisions of General Statutes §§ 42a-2-313 and 42a-2-314. Much of the plaintiff's argument is centered on the words "not guaranteed" contained in the invoice, which, as urged by the plaintiff, would not exclude a warranty. That the parties used the word "guarantee" instead of the word "warranty" in this contract is of slight consideration in view of the facts and circumstances surrounding the parties and their manifest intention in making the contract. They were people of intelligence but were not lawyers, and the technical, legal distinction between the two words should not be permitted to defeat the plain inten-

tion of the parties. *Accumulator Co.* v. *Dubuque St. Ry. Co.,* 64 F. 70, 74.

The plaintiff has not pursued the first assignment as to the necessity for pleading specially a waiver of guarantee. She does not claim that a guarantee fortified the sale in any way or that there had been a breach of guarantee. We, therefore, need not pursue this assignment further.

It was incumbent on the plaintiff to prove that such warranty as she claimed was in fact a part of the contract of sale. The court found, upon conflicting testimony, that there was no express warranty. What, then, was the implied warranty on a secondhand automobile of the vintage and condition of the car in question?

General Statutes § 42a-2-316 (3) (a) provides that "unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and (b) when the buyer before entering into the contract has examined the goods . . . as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him . . . ."

While it does not necessarily follow that no implied warranty of fitness or merchantability applies to a sale of a used car, the cases cited by the plaintiff, and the authorities we have been able independently to find and research, relate almost entirely to actions based on negligence. See, for example, *McGuire* v. *Hartford Buick Co.,* 131 Conn. 417, 422; *O'Connell* v. *Dellert,* 3 Conn. Sup. 25;

*Comstock* v. *General Motors Corporation,* 358 Mich. 163, 174; *Standard Oil Co.* v. *Leaverton,* 239 Mo. App. 284, 287; *Flies* v. *Fox Bros. Buick Co.,* 196 Wis. 196; *Kaplan* v. *Stein,* 198 Md. 414, 422; *Egan Chevrolet Co.* v. *Bruner,* 102 F.2d 373; *Bergstresser* v. *Van Hoy,* 142 Kan. 88; note, 122 A.L.R. 997; Restatement (Second), 2 Torts § 388. With few exceptions, all of the cases referred to above arose out of personal injuries or damage caused by faulty brakes or wheels, either known to or discoverable by the owner or seller and not communicated to the user. Thus in *McGuire* v. *Hartford Buick Co.,* supra, the defendant had sold to the plaintiff a secondhand automobile equipped with two new rear tires improperly installed by an independent contractor. The defendant made no inspection to ascertain whether the rear wheels were properly fastened, and the car was delivered to the plaintiff in a defective and unsafe condition for driving because the threads of the lugs were stripped and the lugs were not screwed on tight. This the defendant knew or could have easily discovered by removal of the hubcaps and making a reasonable inspection. The plaintiff relied upon representations that the car was safe for immediate operation. In consequence of the defendant's negligence, a rear wheel came off, because of the defect described, causing the injuries complained of. The court, in affirming a judgment for the plaintiff, stated the rule as to the defendant's duty to be as follows (p. 422): "The following statement of the duty resting upon the seller of a secondhand car, originally promulgated in a note in 42 A. L. R. 1243 at page 1250, suggests sound reason for holding him in such a case to the responsibility which it defines: 'Where, in the exercise of ordinary sense, the seller of an article must know that if it is defective it will be imminently dangerous to persons who he knows will come in contact there-

with, a duty rests upon such seller to use ordinary care to ascertain the condition of the article and see that it is safe, especially where, by representations or warranties that the article is safe, he induces the sale; and if he fails to exercise ordinary care to ascertain the safety of the article, and as a result he actually sells it in an imminently dangerous condition, he is liable for personal injuries proximately resulting therefrom, at least, to that class of persons who he knows must come in contact with the article.' *Flies* v. *Fox Bros. Buick Co.,* 196 Wis. 196, 210 . . . ; see also *Egan Chevrolet Co.* v. *Bruner,* 102 Fed. (2d) 373, 378, 122 A. L. R. 987 and note, 997; Restatement, 2 Torts, § 412."

We have disregarded as inapplicable those cases where the damages were the result of a contract entered into because of false or fraudulent representations which induced the contract of sale. In such a situation, we have held that a secondhand automobile which was sold under false and fraudulent representations of the defendant's agent that it was as good as new and later was found to be worthless entitled the plaintiff to damages amounting to the difference between the sale price, which would have been the value if the car had been as represented, and the actual value as determined soon after the sale. *Corona* v. *Esposito,* 4 Conn. Cir. Ct. 296; see *Clark* v. *Haggard,* 141 Conn. 668, 673; *Bitondi* v. *Sheketoff,* 91 Conn. 123, 126, 127. No such representations, however, were found by the court to have been made and, for the reasons already stated, we cannot disturb the finding. Nor are we concerned with the question of liability as it applies to the manufacturer and seller of new merchandise which because of defects resulting from negligent construction or inspection creates a danger which should have been foreseen to the extent that the danger was not merely possible but probable.

*McPherson* v. *Buick Motor Co.*, 217 N.Y. 382, 385; see *Crotty* v. *Shartenberg's-New Haven, Inc.*, 147 Conn. 460, 466, 468.

In the case before us, the court could reasonably have found that the claimed defect was latent and not ascertainable on reasonable inspection by the defendant and that there was no evidence which would support a finding that the defendant had any knowledge or means of knowledge of the defect superior to that available to the plaintiff and her son. See dictum in *Nelson* v. *Freuhauf Trailer Co.*, 20 N.J. Super. 198, 202; also *Trust Co.* v. *Lewis Auto Sales, Inc.*, 306 Ill. App. 132, 135; *Wissman* v. *General Tire Co.*, 327 Pa. 215, 217. The court was also entitled to place little credit on the evidence offered by the plaintiff through her principal witness concerning the obvious and present danger in operating the automobile sold by the defendant in its then condition. *Wissman* v. *General Tire Co.*, supra. The witness said nothing about it to the plaintiff's son, who was the operator and for whose convenience the car had been bought; and he did not report his opinion to the plaintiff until three weeks later, upon her return from Europe. He also testified that the alleged defect was repairable at a cost of $75 to $85; and there was reliable evidence from which the court could find that all repairs, after delivery of the car, were the responsibility of the plaintiff.

Upon the facts in the instant case, the defendant has not failed in some duty by selling the plaintiff a secondhand automobile which was other than what it was represented to be. A used car is not a new car, and the express or implied warranties, if any, must be reflected in the newness or antiquity of the car sold. It is not asserted that the automobile here involved had been sold as a renovated or recon-

ditioned car. It was sold "as is," with the understanding that the purchaser was then under a duty to inspect and repair as repairs would be reasonably required. Even in cases where a dealer in used motor vehicles undertakes to recondition the vehicle for resale, he does not become virtually an insurer of the safety of the vehicle he sells. "Nor does it mean that he is required to disassemble an entire . . . [vehicle] to examine each of its parts . . . . One who permits a . . . [vehicle] with a dangerously defective steering mechanism to be used upon the public highways, not only has reason to anticipate that it will cause an accident, *but may be almost certain that it will do so* [italics supplied]." *Egan Chevrolet Co.* v. *Bruner,* 102 F.2d 373, 375-76; *Kaplan* v. *Stein,* 198 Md. 414, 422.

In her prayers for relief, the plaintiff had demanded rescission of the contract, offering to return the automobile in the same condition as it was when delivered to her, upon repayment of the price paid, including taxes, registration and other fees. She also sought damages for breach of warranty. At the time of the offer to rescind, the automobile was in Schenectady, New York. We find nothing in the record other than the mailed offer which was, in our opinion, nothing more than an invitation to the defendant to proceed to Schenectady, inspect the car in its then condition, accomplish its transfer to the defendant and pay the plaintiff the damages claimed. "As a condition precedent to a rescission, the . . . [plaintiff was] required to allege and prove that . . . [she] had restored or offered to restore . . . [the defendant] to its former condition as nearly as possible. *Mandeville* v. *Jacobson,* 122 Conn. 429, 433 . . . ; *Loveland* v. *Aymett's Auto Arcade, Inc.,* 121 Conn. 231, 236 . . . ; *Bitondi* v. *Sheketoff,* 91 Conn. 123, 126 . . . ; 5 Corbin, Contracts § 1114." *Keyes* v. *Brown,* 155 Conn. 469, 476. There is noth-

ing in the record to show that the plaintiff had satisfied this condition precedent to a right of rescission. She kept the car for nearly a year, at the college her son attended in Schenectady, and it was then sold.

There is no error.

In this opinion Dearington and Macdonald, Js., concurred.