62 So.2d 713 (1952)
RAILWAY EXPRESS AGENCY, Inc.
v.
BRABHAM (two cases).
RAILWAY EXPRESS AGENCY, INC.
v.
BRABHAM et al.
Supreme Court of Florida, en Banc.
December 2, 1952.
Rehearing Denied January 27, 1953.
*714 Loftin, Anderson, Scott, McCarthy & Preston, William S. Frates and William C. Steel, Miami, for appellant.
Hall & Hedrick and Lee M. Worley, Miami, for appellee.
HOBSON, Justice.
The tragic accident which gave rise to this litigation occurred in the City of Miami on Northwest 27th Street, which is located in a residential area, at about Noon Sunday, August 10, 1947. A Railway Express Agency truck ran over a large cardboard box in which Michael and Damon Brabham were playing in or about the middle of 27th Street between 14th and 15th Avenues. Michael was killed and Damon was severely injured. At the time of the accident Michael was approximately seven years old and Damon was of the age of five and one-half years.
Three suits were instituted as a result of this accident. One was brought by E.C. Brabham, the father of Michael and Damon Brabham, against the Railway Express Agency to recover damages for the wrongful death of Michael. In that case the jury returned a verdict of not guilty. Thereafter the trial judge granted a motion for a new trial. Mr. Brabham also brought a suit against the Express Company for medical expenses incurred and for the loss of services occasioned by virtue of injuries to his other son, Damon. The third action was one instituted by Damon in which he sought to recover damages for the pain and suffering resulting from the injuries which he had sustained. The two last named cases were consolidated for trial before a jury. The verdicts of the jury were in favor of the plaintiff below in each of these actions. Final judgments consequent upon such verdicts were entered. In the father's suit the judgment was for $15,000 and in Damon's suit it was for $35,000. The Express Company filed a motion for a new trial in each of these cases, which motions were denied by the trial judge.
The appeal in each of these three cases was taken by the Express Company. In the wrongful death action the appeal is from the order granting a new trial and in the other two actions it is from the adverse judgments. This Court is unanimous in its determination that the appeal in the wrongful death action from the order of the trial judge which granted a new trial should be reversed. The Court is divided four to three on the question whether or not the judgments secured by appellees (plaintiffs below) in the other two cases should be affirmed.
As the majority understands this rule of law, it is that one cannot legally be held liable for injury or damage to the person or property of another unless, by the exercise of that degree of care and caution which a prudent or reasonably cautious man acting under similar circumstances would exert, he could have foreseen not the extent of the injury or damage or the manner in which it occurred but could *715 have foreseen that some injury or damage to the person or property of another would reasonably be expected to ensue as a result of his action or conduct.
There is little, if any, difference between our concept of this rule and that expressed in the minority opinion. The divergence in views stems from honest attempts to apply the doctrine of foreseeability to the facts of the instant cases.
It is our conclusion that there is in this record competent substantial evidence which justified the jury in determining that the driver of the appellant's large and comparatively heavy railway express truck, by the exercise of that degree of care and caution which a prudent and reasonably cautious man would have exercised under similar circumstances, could have foretold the fact that the box contained animate objects in the form of the two little boys.
The conclusion reached by the minority is predicated, as we comprehend, upon the view that this record does not contain any competent substantial evidence from which the jury could have found or reasonably inferred that the driver of appellant's truck, by the exercise of that degree of care and caution which under the circumstances was required of him by law, could have foreseen that injury to another or others would reasonably be calculated to result from his action.
The pertinent evidence in the two cases which were consolidated below shows that the height of each boy was greater than the length of the box proper but less than the over-all length of the box including the flaps. We should not, and do not, assume that the flaps stood out rigidly and at all times fully extended while the box was rolling over and over so as to hide every part of the boys' bodies from the view of the truck driver even if he had been exercising that degree of care and caution which a prudent and reasonably cautious man would have employed under similar circumstances.
We do not believe that this Court is justified in indulging such presumption when the testimony discloses that: the cardboard box was rolling over as the truck approached it; the accident occurred in a strictly residential district, not on a school day but on Sunday at approximately 12:00 o'clock Noon; the boys had been playing in and rolling the box over for several hours before the accident and thus had broken down its corners and, as the jury evidently did determine, had also weakened or broken down the flaps which we are apparently expected to assume were as rigid as were the flaps upon the obviously brand new box which was exhibited by counsel to this Court at the time of argument; the flaps were indeed "flaps" which very word connotes "something broad and flexible, or flat and thin, that hangs loosely"; the jury had a distinct advantage over us in that the jurors actually observed the witnesses as each gave his version of this unfortunate tragedy and had the duty, responsibility and opportunity of determining the question whether these flaps were truly rigidly extended or broken down in their texture in such manner as to have at least some part of the boys' bodies exposed to the view of a reasonably cautious, prudent operator of a dangerous instrumentality who saw, or should have seen, the box rolling over and over. The question whether the flaps were actually rigidly extended was for the jury.
It may be noted in passing that the foregoing observations are made without consideration being given to the fact that Damon Brabham, the younger of the two boys who was playing in the cardboard box, testified: "Part of my feet were sticking out on the flaps of it and part of his [Michael's] head was sticking out on the flaps too." Objection was made to this testimony. In fact, appellant takes the position that Damon Brabham should not have been permitted to testify at all about the accident because at the time it took place he was only five and one-half years of age. If the objection which was made could be taken as one which challenged Damon's competency as a witness the fact remains that the trial judge examined the boy and obviously determined that he was competent to testify. We do not find any *716 justification in the record for reversing the trial judge in this exercise of his sound judicial discretion.
Assignment of Error No. 5, to-wit: "The jury was deceived as to the force and credibility of the evidence" is relied upon in support of the proposition that this Court should consider as reversible error the trial judge's action in permitting Damon to testify. We do not believe that this assignment of error is sufficient predicate for that position because after examining Damon the trial judge made the statement that he would allow the boy's testimony "for whatever it may be worth" which statement, so far as the record discloses, was made in the presence of the jury. Therefore, it could hardly be said that the jury was deceived as to the force and credibility of Damon's testimony because the judge's statement was obviously an admonition to the jury to consider the boy's age at the time of the accident in evaluating his testimony. Although we have not found it necessary to consider Damon's testimony in reaching our conclusion, it is patent such testimony if considered, would strengthen our view that had the driver of appellant's truck been exercising that degree of care and caution which a prudent or reasonably cautious man would have exercised under existing circumstances, he would readily have observed (as the jury patently determined he should have observed) that the boys were in the cardboard box while it was rolling over and the flaps were necessarily flapping, for we find no evidence in the record to the effect that the flaps were firmly attached to one another or to the box except that each was attached at one end to the box but not in such manner as to keep it from flapping back and forth.
How far is the doctrine of foreseeability to be carried in cases involving the operation or use of dangerous instrumentalities? Suppose a person walking along a rural road in a sparsely settled farming area, yet conscious of the existence of family dwelling houses thereon or nearby, with a pistol, rifle or other firearm in his possession, which he would have a legal right to do, should see a cardboard box of the same type as the box depicted by the testimony in these cases and should decide to use it as a target, could it reasonably be said that he might do so if all other essential facts and circumstances were identical with those delineated by the testimony in the instant cases, and not be legally liable for the injury which he might inflict thereby upon the boys playing in the cardboard box? We think that the degree of care and caution which a prudent or reasonably cautious man would use under such circumstances would require a more thorough observation and examination than merely to assume that a very moderate wind was causing the large cardboard box to roll over and over. We repeat that the question whether an operator or user of a dangerous instrumentality has exercised that degree of care and caution which a prudent or reasonably cautious man acting under similar circumstances would have employed is for the jury, unless there is no competent substantial evidence from which the jury might determine or reasonably infer that such person could have foreseen that injury or damage to the person or property of another would reasonably be expected to ensue as a result of his action or conduct.
The act of the driver of the truck amounted to negligence as that term is understood by laymen the world over. He certainly failed to conform to standards of conduct which are insisted upon by society. The question whether his act should be classified as one of "negligence" in a legal sense, that is to say whether the act or conduct constituted "actionable" negligence, was, as it always is, a question for the jury unless, as aforestated, there is no competent substantial evidence from which the jury might determine or reasonably infer that the actor could have foreseen that injury or damage to the person or property of another would reasonably be expected to ensue as a result of his misconduct. It is admitted that had the truck driver driven along and upon the right-hand side of 27th Street, which is a requirement of the law and a rule of the road, he would not have struck the cardboard box because there *717 was ample room between the right-hand curb and the box for the truck to have passed without touching it.
We do not have the opinion that a person operating a heavy truck which is, as we have repeatedly held, a dangerous instrumentality, should be held legally liable for injury or damage resulting to the person or property of another simply because he drives the vehicle against or upon the object such as the cardboard box involved in these cases when, by the exercise of ordinary and reasonable care, he could avoid striking it. However, we are persuaded to the view that when the driver of such a dangerous instrumentality leaves his beaten path and, either deliberately or by virtue of inattention to his driving, runs over an object as large as the cardboard box involved herein while it is rolling over in or about the middle of an urban residential paved street, as distinguished possibly from a street in a down-town commercial area, he is under a greater duty then he might be were the "yellow light" of caution not so ominously present and should be certain to exercise that degree of care and caution required by the patent exigencies to observe closely enough to determine what the probable consequences of his action might be.
The jury in the two consolidated cases wherein judgment was for the plaintiffs below was wholly justified in concluding that the driver of the railway express truck did not use that degree of care and caution which a prudent or reasonably cautious man would have exercised in an effort to determine whether injury or damage to the person or property of another would ensue as a result of his act.
The degree of care and caution which a prudent or reasonably cautious man would exercise, or, in other words, that which amounts to ordinary and reasonable care, varies with the circumstances of each and every case. It is our opinion under the circumstances of this case that the driver of the truck was under the duty of continuing along the unobstructed righthand side of 27th Street, at least to the point where he could observe whether the cardboard box was being rolled by a moderate wind or, as was the fact, by the efforts of the two little boys who were playing therein, before deliberately turning out of his way to crush what he erroneously assumed to be a large empty cardboard box. If his action was not deliberate (of course, he did not actually know the boys were in the box) then and in that event he ran over the box by virtue of the fact that he was not looking where he was going. Inattention, however, is no excuse, the test still being whether by the exercise of that degree of care and caution which a prudent and reasonably cautious man would have exerted, he could have ascertained that the box contained the person or property of another and that injury or damage to such person or property would in all probability result from his act. The fact that he was not paying proper attention to his driving  was not exercising that degree of care and caution which was required of him by law, yea even by the principle proclaimed in and by the "Doctrine of Foreseeability"  is clear from a consideration of his own testimony. When first questioned he stated he did not remember that he had run over the large cardboard box, yet on the witness stand he confessed a faint or hazy recollection of seeing a "dilapitated box" which he assumed to be a trash box.
Counsel for appellant in their reply brief say in effect that it is the duty of this Court to determine "whether the `defendant was negligent'" and that this "Court must, as stated in the Restatement of Torts, Section 284, determine whether the act of driving over the trash box [which description of the box is that of the driver of the truck and was predicated upon his assumption] was one which the driver `* * * as a reasonable man should realize as involving an unreasonable risk of causing an invasion of an interest of another.'" We have the view that it was the duty and responsibility of the jury to determine the question whether the act of the driver of the truck was one of negligence. The jury in the consolidated cases concluded that the action of the driver of the truck amounted to negligence, with which conclusion we agree. Certainly we should not substitute our judgment for its judgment when, as I *718 find, there is competent substantial evidence in the record which sustains its resolution. Moreover, counsel for appellant concede that the question whether the defendant was negligent, and we quote, "is the whole point * * *" for they quote from 38 Am.Jur., Negligence, Section 58, page 709, as follows:
"The view is that once it is determined that a defendant was negligent, he is to be held responsible for injurious consequences of his negligent act or omission which occur naturally and directly, without reference to whether he anticipated, or reasonably might have foreseen such consequences."
The controlling question in these combined cases was one of fact for the jury to resolve. We conclude that there is in this record competent substantial evidence which sustains the jury's verdicts. It is clear that there is competent substantial evidence in this record from which the jury had the right to draw reasonable inferences that carried it to its ultimate conclusions.
It is wholly unnecessary for us to cite the many cases in which we have held that we will not substitute our judgment for that of a jury upon questions of fact if there should be in the record any competent substantial evidence which sustains the findings of facts made by it. We should and do give more than "lip service" to this well established principle.
We affirm the final judgments in the personal injury cases because there was competent substantial evidence before the jury which justified the findings of facts made by it. We reverse the order granting a new trial in the wrongful death suit because in that record also we found competent substantial evidence which sustains the jury's verdict and did not detect harmful error therein  hence, the order granting a new trial was not justified.
Affirmed in part and reversed in part.
TERRELL, ROBERTS and DREW, JJ., concur.
SEBRING, C.J., and THOMAS and MATHEWS, JJ., dissent.
SEBRING, Chief Justice (dissenting).
I am unable to agree with the majority opinion on this appeal. As I understand the record, the accident out of which the litigation arose occurred around Sunday noon on a quiet residential street in Miami. At the time of the accident there was nothing in or near the street to obstruct the vision of the driver. According to the evidence, the driver of the truck had left the downtown office of the Express Company to carry certain express packages to the Miami Airport. As a favor to the father of the children, who was also an employee of the Express Company working at the downtown office, the driver agreed to deviate slightly from his regular route of travel to give the father a ride home. When the destination of the father was reached he alighted from the truck and the driver proceeded on to the airport. About 300 feet down the street from where the father alighted was the box in which the children were playing. The box was lying broadside in the street, at right angles to the direction of travel. The truck approached the box at approximately 8 to 10 miles an hour, ran over it, and proceeded to its destination. Immediately after this accident, Damon crawled out of the box and it was then discovered by persons at or near the scene that Michael had been killed and that Damon had been injured.
As soon as the truck had reached the airport, the driver and a company guard riding with him at the time of the accident were questioned and denied any knowledge of having been involved in an accident. When questioned further they stated that they had some faint recollection of having seen and struck an old dilapidated cardboard box somewhere along their route of travel  an old piece of debris such as might have fallen off a trash truck  but that they had paid no particular attention to it as there was nothing about it to attract their attention. On this and other evidence the juries returned their verdicts.
The first question with which we are confronted on the appeal involves the issue whether by the exercise of ordinary and reasonable care the truck driver could have *719 or should have seen that the children were playing in the box and hence could have or should have avoided striking them.
On this all-important issue the testimony of a Mr. Joe Sprinkle, a witness for the plaintiffs, is most revealing. His testimony upon this issue was subtantially as follows: "Mr. Ransone, a friend of mine and myself * * * were headed south of 17th Avenue * * * We made a left turn on to 27th Street * * * We noticed this Railway Express truck meeting us. It was headed west on 27th Street * * *. We noticed it because it was the only thing at that particular moment in motion on the block * * *. We noticed this box in the middle of the street before the Railway Express truck * * * the thing that called our attention to the box was the fact that it rolled over a time or two. By that I mean a quarter turn on the box. I think that is what called our attention to it because it was in motion * * *. The express truck * * * was * * * maybe within 100 or 125 feet of the box, when we noticed it rolling over * * *. The Railway Express truck proceeded down in about the center of the street and ran over the box * * *. He proceeded on his way. He did not stop * * *. We didn't really know anything was amiss until we pulled down on the right hand side of 27th Street, and when we came almost parallel with the box, we could see the open end of it * * *. And I believe Damon was the boy who was injured, and he crawled out of the box and first made his appearance, and that is the first that we knew that something was really amiss * * * the total length of the child [Michael] was no longer than the box."
On cross examination the plaintiffs' witness answered in response to questions put to him that there were no children in or near the area at the time of the accident; that he did not realize there were any children in the box until he saw Damon crawl out; that he never at any time before the accident saw any part of either child sticking out of the box; that "they weren't visible at all"; that when he first observed the box moving he thought the wind was blowing the box down the street; that after the car in which he was riding came to a stop he realized for the first time that the movement of the box had not been caused by the wind, as he had thought when the car in which he was riding came up to it; that he came to this realization only after he had alighted from the car and then discovered that the wind was not blowing with such force as to have set the box in motion.
Several other persons who were in the immediate vicinity at the time of the happening of the accident were called as witnesses for the plaintiffs. While all of them testified to having seen the children playing in and around the box earlier in the morning not one testified that at or immediately prior to the accident any portion of the bodies of the children were protruding from the ends of the box so that persons approaching on the street from the east or west could or should have known that the box contained the children.
The testimony of the infant child, Damon Brabham, is relied upon to establish the fact that the children were actually visible to the driver and that they could have been seen by him had he been keeping a proper lookout. In connection with this testimony we think it important to notice that according to the record Michael, the eldest child, was 53 to 55 inches in height and Damon, the youngest, was 49 inches in height. The cardboard box in which the children were playing was 26 1/2 inches wide, 15 inches high and 43 7/8 inches long. At each end of the box were 4 cover flaps 7 inches in width which were extending outward at and immediately prior to the time of the accident, thus making the overall length of the box with the flaps extended 57 7/8 inches. As to the statement made by Damon with respect to the opportunity for being seen by the driver, his testimony, which was admitted over objection and submitted to the jury by the trial court with the observation that it would be submitted "for whatever it may be worth", was to the effect that he remembered being in the box rolling over out in the street; that he and Michael were lying straight out in the box, stretched out flat; that "part of my feet were sticking out on the flaps of it and *720 part of his [Michael's] head was sticking out on the flaps too;" that neither he nor Michael saw the truck coming but merely heard it as it approached.
I am of the opinion that Damon's testimony fails to show that as the truck driver approached the box the children could have been seen had he been keeping a proper lookout. Indeed I believe that when Damon's testimony is considered in connection with the facts concerning the length of the box and the manner in which the box was lying when struck, the only reasonable conclusion is that the children were in fact hidden from the view of the driver at the time of the accident.
The plaintiffs in their argument point to certain tread marks on the outer surface of the box; the fact that Michael's chest and abdominal region were crushed while only Damon's hip and upper leg region were injured; and to the position of Michael's body as it lay outstretched upon a portion of the box, as shown by photographs taken after the accident; as proof that the children could have been seen by the driver of the approaching truck had he been keeping a proper lookout.
Assuming that the photographs taken after the accident were admissible in evidence, I cannot accord to them the probative value contended for by the plaintiffs; for before the photographs were taken the right front wheel and the rear dual wheels of the truck had passed over the box, the child Damon, whose feet were in immediate contact with the body of Michael, had pushed himself out of the box, and the box had been handled and torn apart by the witness Sprinkle and his companion Ransone. Under these circumstances the contention of the plaintiffs with respect to the material facts supposedly shown by the exhibits should be rejected because bottomed upon evidence which is so speculative and conjectural in character that it cannot form a valid basis for a verdict on the issue.
The next question is whether, even though the children were not shown to have been within the view of the driver of the Express Company truck, he nevertheless should have known of their presence in the box and consequently should be held liable for inflicting injury upon them. Upon this point the argument of the plaintiffs rests upon the contention that whenever a person operating an automobile on a public street drives the vehicle against or upon any object of the size and character involved, when by the exercise of ordinary and reasonable care he can avoid striking it, he will be held legally liable for any damage resulting to person or property within the object or without his view until the motor vehicle is set at rest.
In support of this contention the plaintiffs cite the case of Kaufman Beef Company v. United Railways & El. Co. of Baltimore, 135 Md. 524, 109 A. 191, 192, 9 A.L.R. 476. The facts of this case are that the defendant street car company left a large bundle of magazines lying in the public street. Although the bundle was plainly visible and could have been avoided, the driver of a motor truck ran over the magazines, with the result that his vehicle got out of control and ran into a street car thereby killing him. In a suit against the owners of the street car company to recover damages for the death of the truck driver upon the ground that the company had negligently thrown the magazines into the street, recovery was denied, the court holding: "A driver who failed to turn aside from such an impediment would be chargeable with negligence directly contributing to injury sustained from contact with it, unless he was deprived of the opportunity to discover its presence and escape the danger by circumstances for which he was not responsible."
The plaintiffs cite Pease v. Sinclair Refining Co., 2 Cir., 104 F.2d 183, 184, 123 A.L.R. 933, as a case supporting their contention. In that suit the plaintiff, a high school teacher who taught general science, received from the defendant free of charge "a process oil display" to be used in connection with his classroom lectures. Unknown to the plaintiff the defendant had added water to one of the containers marked "kerosene" to avoid danger in shipment and the appearance of discoloration of pure kerosene. The fact that the water had been added or that the contents were not as labeled on the container was *721 not made known by the defendant. The plaintiff science teacher had some metallic sodium, not received from the defendant, and desired to conduct an experiment before one of his classes. Kerosene is a recognized preservative of metallic sodium whereas combined with water it is highly explosive. The plaintiff opened the bottle marked "kerosene" and poured its contents onto the metallic sodium. As the result there was a terrific explosion and the plaintiff was permanently injured.
At the trial there was evidence that it is a general policy among chemists to label products carefully; that the qualities of kerosene as a preservative of sodium, and of water as explosive in combination with sodium, are well known; that chemists do not rely on the sense of smell to test chemical products, since this is not a reliable or proper test; that there is little, if any, odor in refined kerosene; and that while companies who furnish educational displays try to limit such exhibits to display purposes only, it is recognized by such companies that this is impossible and that in furnishing exhibits it had to be contemplated that such exhibits might be used for any purpose for which they would be available. The court held that under all the facts, including the evidence above, it was a question for the jury to determine whether the defendant was culpable in mislabeling the container without warning of any kind, when the defendant knew or might reasonably have been expected to know or foresee that kits of chemicals and chemical products sent to schools "are subject to all the chances to which the varied population of a school may subject them."
I agree with the conclusions reached in the decisions cited by the plaintiffs. But I cannot find support in them for the proposition urged by the plaintiffs that a driver of a motor vehicle who can avoid driving over an object in the highway will be held to liability for any damages to a person within the object or without his view until the motor vehicle is set at rest. Indeed, I construe the holdings as doing nothing more than affirming a rule of negligence which is of almost universal application; namely, that where the possibility or probability of consequences can be reasonably foreseen, anticipated or prevented an actor who does not use ordinary and reasonable care to avoid such consequences will be deemed guilty of negligence.
This general rule is present in every case involving the issue of negligent conduct and under a proper set of facts will be given application so as to authorize recovery. Had the express company truck in the present case, for example, gone out of control when it struck the cardboard box, thereby causing injury to the driver, no one, I think, would seriously contend that the driver's own contributory negligence would not have prevented his recovery from the person who left the box lying in the street; for the reason that the law would have imposed upon the driver the duty of foreseeing the probability of the consequences of his action. Had the truck in passing over the box been deflected from its course in such a manner as to cause it to strike the oncoming car in which the witness Sprinkle was riding, a verdict against the truck driver for damages sustained by Sprinkle would doubtless have been maintainable for the same reason. Had a child hidden behind one of the telephone poles adjacent to the street suddenly darted into the pathway of the oncoming express truck and been struck, the driver might have been responsible for the injuries resulting, if by the exercise of ordinary and reasonable care the driver should have anticipated, from all the circumstances at the scene  such as, for one example, the presence of a group of children  that children were playing in and around the street and might without appreciation of the danger involved unwittingly subject themselves to the peril of moving traffic. Perhaps the driver would have been liable for injury, even though in acting as a reasonably prudent man he could not have anticipated or foreseen the possibility of a child darting into the path of the oncoming vehicle, if, after the child had placed himself in a position of peril, the driver, by the exercise of ordinary and reasonable care, could or should have noted his presence in time to have avoided striking him.
*722 Such examples could be multiplied, but to do so would serve no useful purpose. All of them are but illustrations of a set of circumstances under which recovery might be authorized under the doctrine of foreseeability  of illustrations of situations in which the possibility or probability of consequences could or should have been foreseen, anticipated, or prevented by the exercise of ordinary and reasonable care.
It is my conclusion that the circumstances surrounding the happening of the accident here involved are not such as to authorize recovery under the rule. The testimony of the two eye witnesses to the accident, Sprinkle and McKinley Carr, make this fact plain. Sprinkle was in the oncoming car being driven by his friend Ransone. McKinley Carr was mowing the lawn in an adjacent yard. Although he was approaching the box from an opposite direction, Sprinkle's view was relatively the same as the view of the truck driver. He watched the box as he came down the street and saw nothing unusual about it to suggest the presence of children. He saw the truck coming toward him at a low rate of speed pass over the box and yet didn't know that anything was wrong until after the truck was gone and Damon crawled out of the box. McKinley Carr, the other witness, said the box looked like a "trash box", a "dilapidated box", that it was "completely crumpled down." He saw the truck pass over the box and not thinking that there was anything in the box he continued with his work. Only after he heard a scream and then saw Damon crawl from the box did Carr have any idea that the box contained the children.
It is well settled that the prime foundation of liability in negligence cases is knowledge, or what is deemed in law to be the same thing; namely, opportunity by the exercise of ordinary and reasonable care to acquire knowledge of the peril which subsequently results in injury. Fault on the part of a defendant must be found in his action or non-action, accompanied by knowledge, actual or implied, of the probable results of his conduct contemporaneous with the infliction of injury. Lindsay v. Thomas, 128 Fla. 293, 174 So. 418. As the matter is set forth in Volume II, American Law Institute's Restatement of Torts, Sec. 284, negligent conduct is "an act which the actor as a reasonable man should realize as involving an unreasonable risk of causing an invasion of an interest of another." In respect to when the actor should be held to have recognized the risk, the Restatement says: "The actor should recognize that his conduct involves a risk of causing an invasion of another's interest, if a person (a) possessing such perception of the surrounding circumstances as a reasonable man would have, or such superior conception as the actor himself has, and (b) possessing such knowledge of other pertinent matters as a reasonable man would have or such superior knowledge as the actor himself had, and (c) correlating such perception and knowledge with reasonable intelligence and judgment, would infer that the act creates an appreciable chance of causing such invasion." American Law Institute's Restatement of Torts, Sec. 289. The comment on the rule states "* * * Not only must the act involve a risk which the actor realizes or should realize, but the risk which is realized or should be realized must be unreasonable * * *."
When this rule is applied to the instant case, it is plain that before there can be a valid recovery in the case the evidence with respect to this tragic accident must disclose a state of facts from which it can be reasonably inferred from all the circumstances that as the truck driver approached the box lying in the street he knew or should have realized or anticipated by the exercise of ordinary care that the box might contain living human beings and that if he drove his truck over or against the box the risk of injuring such persons might be involved. The evidence does not in my opinion disclose such a state of facts. For out of all the people at the scene, at least two of whom had the same opportunity for knowledge that the truck driver had, not one testified to any single fact from which it could be reasonably concluded that the driver of the truck could or should have foreseen or anticipated that there might be children lying in the box or that by the outwardly harmless act of driving over the box *723 the tragic death and injury of children would ensue.
Having reached this conclusion with respect to the evidence in the case, I am of the opinion that the judgments entered in the personal injury suit, and the order granting the new trial in the wrongful death action, should be reversed and set aside.