107 So.2d 601 (1958)
Laura RAWLS and Edward K. Rawls, Jr., her husband, Appellants,
v.
Paul E. ZIEGLER, J.H. Ziegler, Luby Chevrolet Co., a Florida corporation; A. Cecil Deugnot, Charles H. Bruce, Elva T. Furry and Joseph A. Waite, d/b/a Cecil & Bruce Truck Equipment Co., Appellees.
Supreme Court of Florida.
October 10, 1958.
Rehearing Denied December 17, 1958.
*602 Kelner & Lewis and Fred Patrox, Miami, for appellants.
Morehead, Forrest, Gotthardt & Orr, Miami, for Paul E. Ziegler and J.H. Ziegler.
Charles A. Kimbrell and Dixon, DeJarnette, Bradford & Williams, Miami, for Luby Chevrolet Co.
Michael Shores, Miami, for A. Cecil Deugnot, Charles H. Bruce, Elva T. Furry and Joseph A. Waite, d/b/a Cecil & Bruce Truck Equipment Co.
ROBERTS, Justice.
Plaintiffs, husband and wife, sued to recover their respective damages for injuries sustained by the plaintiff wife when the car she was operating was side-swiped by a truck owned by the defendant, J.H. Ziegler, and being operated by his son Paul. The truck, a two-ton Chevrolet chassis with a five-yard dump body, had been purchased by Mr. Ziegler from the defendant, Luby Chevrolet Co. ("Luby" hereafter). Luby had employed the defendant, Cecil & Bruce Truck Equipment Co., a partnership ("Cecil & Bruce" hereafter), to mount the body of the truck on the chassis.
The complaint charged that Paul Ziegler negligently operated the truck so that it collided with the plaintiff's car while it was stopped for a red light at an intersection. The substance of the charge against Luby was that it knew or should have known that the truck would be used on the public highways for hauling payloads and that, if improperly designed and constructed, it would be a hazard and danger to other persons using the public streets; that it was negligent in (1) placing upon the chassis of the truck a body reasonably calculated to carry a payload in excess of that for which the truck was designed, and (2) in manufacturing, selling, and designing a truck that was not in a reasonably safe mechanical condition for use upon a public highway. The same charge as in (1) above was made against Cecil & Bruce and, additionally, it was charged that they were negligent in placing upon the chassis a body in such manner that the truck became a danger and hazard to persons using the public streets. It was alleged that the negligence of the defendants, Ziegler, Luby, and Cecil & Bruce, caused or contributed to cause the rear wheels, rear end, rear springs, and drive shaft of the said truck to drop off or break off from the frame of the chassis of the truck, thereby causing or contributing to cause the collision. The defendants were charged jointly and severally with liability for the plaintiff's injuries.
All defendants denied the charges of negligence, and the defendants, Luby and Cecil & Bruce, averred that the proximate cause of the accident was the careless, reckless and negligent operation of the truck by the defendant, Paul Ziegler.
In due course, the plaintiffs and the defendants moved for summary judgment *603 upon the basis of the pleadings, depositions and affidavits filed in the cause. The trial judge entered summary judgments in favor of the defendants, Luby and Cecil & Bruce, and the plaintiffs have appealed therefrom. The cause is still pending as to the liability of the defendants, Ziegler and son, to the plaintiffs.
The principal contention of the plaintiffs on this appeal is that, under the facts disclosed by the depositions and affidavits and applicable principles of law, the jury could properly have found legal liability on the part of Luby and Cecil & Bruce to plaintiffs, so that it was error to enter summary judgment in their favor.
There are no great discrepancies in the various witnesses' accounts of what occurred, as related in their depositions. Mr. Ziegler stated that he bought the truck from a salesman of Luby, specifying that he wanted a two-ton chassis with a five-yard dump body mounted thereon. He said that the salesman understood that the truck would be used to haul fill and told him that it "would do the job." He directed the salesman to have the springs built up "to carry the load," and five extra leaves were added. Other extras agreed upon between Ziegler and the salesman were larger tires, a two-speed axle, and a vacuum brake booster. Mr. Ziegler dealt only with Luby and was billed for the completed truck by Luby. Luby's salesman did not advise him as to how much of a load he would carry in the truck nor warn him against overloading. Mr. Ziegler himself added a six- or eight-inch board to the dump body so that the five-yard body would hold six yards.
It was shown that it was customary in the area to put a five-yard dump body on a two-ton chassis. One of the partners in Cecil & Bruce said that they had mounted 30 or 40 bodies on two-ton rated chassis in the past year and that the "greater majority" of them were five-yard bodies. Another witness, the owner of the company for whom Paul Ziegler was hauling fill, said: "It is almost a standard practice for a man buying a two ton truck to put a four yard body on it and build it up to haul six yards and some will request putting a smaller body on if they are a little short on funds and build it up later higher by sideboards to haul six. * * * but they all want to haul six yards on a two [ton] truck."
The accident occurred about a month after the truck was purchased, the speedometer showing that the truck had travelled more than 2,000 miles during this time. It had been used by Mr. Ziegler's sons for hauling fill since its purchase. Paul said that he always carried a full six-yard load, and was carrying a full load of the same type of fill at the time of the accident. It was undisputed that the truck was overloaded according to the manufacturer's recommendation in its Chevrolet Data Book, which recommended only a two and one-half or three yard dump body for the hauling of coal, sand and gravel, and in its Truck Operator's Manual showing the recommended gross vehicular weight as 16,000 pounds, a copy of which was given to Mr. Ziegler when he bought the truck.
Paul Ziegler gave the following account of the accident: He was about two car lengths behind plaintiff, in the same traffic lane, when she slowed down and stopped for a red light at an intersection. He tried to put on his brakes but seemed to be unable to depress the brake pedal, although he could not say definitely that there was anything wrong with the brake. When he found that he could not stop the truck in time, he swerved to the left to avoid hitting her car. This was his second trip hauling fill that day. He had had no difficulty with the brakes at any time prior to the accident. He estimated his speed at about 20 to 25 m.p.h. prior to the accident but might have been going 30 m.p.h. There was heavy traffic.
Some portion of the truck (said by an eye witness to be the body) collided with the left side of plaintiff's car. As shown by the photographs taken immediately following the accident, a large hole was gouged in the top of the left fender and the left *604 rear door was badly damaged. The front of the car, including the left front door, was not touched. The plaintiff wife was thrown against the steering wheel by the impact, to her injury.
After the accident the rear end of the truck (rear wheels, rear springs, and axle) was found to be completely detached from and lying several feet behind the truck. It was shown that on this truck model the rear end was attached to the truck frame only by the spring hangers at each end of the two rear springs. The four rivets holding each spring hanger to the frame had been sheared off even with the frame on the two spring hangers on the right-hand side. On the left, the left front spring hanger had broken, leaving a small portion still attached to the frame by the two bottom rivets; the left rear spring hanger was still attached to the frame, the rivets intact.
Several witnesses gave their opinions as to the cause of the shearing of the rivets and resultant detachment of the rear end from the frame of the truck. All agreed that the overloading of the truck was a contributing factor, but none said that overloading alone could have caused the mechanical failure. Two witnesses said that the sudden swerving, causing a shifting of the load on the truck body, combined with the overloaded condition, could have caused it. Another said that the impact with the plaintiff's car, combined with the overload, caused it; another, that it was caused by the overloading and the building up and resultant stiffening of the springs, and that it would not have happened if the springs had not been built up. In view of the fact that the truck had hauled the same quantity of the same type of fill for almost a month, and that the witnesses who examined the rivets and hangers said that the shearing off of the rivets was instantaneous and not a gradual wearing away, no credence can be given to this last opinion if construed to mean that the overloading on stiffened springs alone caused the mechanical failure.
Assuming that the accident would not have occurred and plaintiff wife would not have been injured if there had been no mechanical failure, and taking the only reasonable view of the evidence as to the cause of the mechanical failure  that is, that it was caused by a combination of the overloading, the stiffening of the springs, and some exceptional force applied to the rivets such as the sudden swerving of the truck, or the impact with the plaintiff's car  is there any principle of law that the jury could have applied to the undisputed facts of this case as a predicate for finding a legal liability on the part of Luby and Cecil & Bruce to plaintiffs?
Since first expounded by Judge Cardozo in MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696, many courts have adopted the doctrine of "product liability" of a manufacturer to persons not in privity with him for injuries resulting from a defect in the manufactured product. See Stultz v. Benson Lumber Co., 1936, 6 Cal.2d 688, 59 P.2d 100, for an excellent discussion of the origin and development of the doctrine of product liability. The rule has been followed by this court. See Matthews v. Lawnlite Co., Fla. 1956, 88 So.2d 299, in which it was held that the manufacturer was liable to a customer of a retail dealer for injuries caused by a concealed and inherently dangerous device that was a component part of a lawn chair manufactured by the company. The rule has been extended to suppliers of such products, such as a vendor. Prosser on Torts, § 83, p. 673; Harper and James, the Law of Torts, § 28.2, p. 1536; Restatement, Torts, § 388, p. 1039. And the Restatement of Torts has placed independent contractors who negligently make, rebuild or repair chattels on the same footing as negligent manufacturers. § 404, Restatement of Torts, p. 1092.
It is obvious that neither Luby nor Cecil & Bruce was, technically, a "manufacturer" of the truck purchased by Ziegler. Luby, as vendor of the component parts of the truck, could be classified as a "supplier"; and *605 Cecil & Bruce could be classified as an "independent contractor" employed by Luby to mount the body on the chassis. There are important limitations on the liability of each of such classes.
Thus, as to independent contractors, all authorities recognize that there is no liability if the contractor merely follows the plans, directions and specifications of his employer, since in that case the responsibility is assumed by the employer, at least where the plans are not so obviously dangerous that no reasonable man would follow them. See the Restatement, Torts, § 404, comment a., p. 1093; Prosser on Torts, § 84, p. 697. The evidence as to the standard practice in the community of placing five-yard bodies on two-ton chassis is, without more, sufficient to discharge Cecil & Bruce from legal liability to plaintiffs for assembling a five-yard body on a two-ton chassis in accordance with their directions from Luby. Nor do we think that Cecil & Bruce can be held legally liable to plaintiffs for failing to recommend to Luby that the frame be fishplated, as here contended by plaintiffs. One witness said that fishplating the frame helps to prevent the frame from arcing downward under a heavy load, but does not affect the strain on the spring hangers. There was no direct evidence, nor any from which it could be inferred, that the absence of fishplating had anything at all to do with the shearing of the rivets on the spring hangers, much less that the absence of fishplating made the truck so obviously dangerous that no reasonable contractor would have assembled the truck without fishplates, even though not ordered by his employer. It was not, then, error to enter summary judgment in favor of Cecil & Bruce.
As to the liability of Luby, plaintiffs state in their brief that § 388 of the Restatement "predicates the vendor's liability upon his knowledge, actual or constructive, of dangers inhering in the chattel when subjected to the use for which it was intended. Failure to warn of these dangers is the fulcrum of liability" (emphasis added); they argue that Luby's salesman callously disregarded this duty. It is also argued that Luby was negligent in placing the five-yard body on the two-ton chassis and in adding the extra leaves to the spring and other extras designed to increase the load-carrying capacity of the truck, contrary to the manufacturer's recommendation and specifications, when it knew or should have known that the truck as so constructed would be dangerous for its intended use, i.e. hauling fill.
It might be noted that Luby was not charged in the complaint with culpable negligence arising out of a failure to warn Ziegler of any dangers inherent in the truck design or in its use. But even if it had been, no extended discussion is needed on the question of whether the jury could reasonably have found Luby negligent in this respect; nor need we consider at any length the question of whether the jury could reasonably have found that Luby was negligent in designing  or, at least, in agreeing with Ziegler upon a design of  a truck contrary to the manufacturer's specifications and recommendations.
This is so because a manufacturer or supplier, like any other defendant, cannot be held legally liable for a plaintiff's injuries unless, by the exercise of that degree of care and caution which a prudent or reasonably cautious man acting under similar circumstances would exert, he could have foreseen that some injury or damage to the person or property of one in plaintiff's class would reasonably be expected to ensue as a result of his action or conduct. See Railway Express Agency v. Brabham, Fla. 1953, 62 So.2d 713.
Where injury results from two separate and distinct acts of negligence by different persons operating and concurring simultaneously and concurrently, both are regarded as the proximate cause and recovery can be had against either or both. De la Concha v. Pinero, Fla., 104 So.2d 25. But where, as here, an independent force or act intervenes to bring about a result that *606 the defendant's negligence would not otherwise have produced, it is generally held that the defendant is liable only where the intervening force or act was reasonably foreseeable. See Benedict Pineapple Co. v. Atlantic Coast Line R. Co., 1908, 55 Fla. 514, 46 So. 732, 737, 20 L.R.A.,N.S., 92; Cone v. Inter County Tel. & Tel. Co., Fla. 1949, 40 So.2d 148. It is sometimes said that an intervening act or force "[breaks] the chain of causation", Zierer v. Daniels, 1956, 40 N.J. Super. 130, 122 A.2d 377, 381; or that the intervenor acts as a nonconductor and insulates the negligence of the first wrongdoer, Waterman v. Liederman, 1936, 16 Cal. App.2d 483, 60 P.2d 881. Harper & James, in The Law of Torts, Vol. 2, § 20.5, p. 1143, state the rule as follows:
"If the likelihood of the intervening act was one of the hazards that made defendant's conduct negligent, that is, if it was sufficiently foreseeable to have this effect  then defendant will generally be liable for the consequences; otherwise he will generally not be, provided, of course, that the intervening force is a cause of the injury."
Applying this rule to "product liability" of manufacturers and suppliers, it appears to be well settled that a supplier of an automobile with defective brakes is liable for injuries sustained in an accident resulting from such defective brakes, even though the negligence of the driver in continuing to operate the car on the public highway with knowledge of the defective brakes concurred in causing the accident. The "suppliers" who have been held liable under the rule include a car rental agency, a dealer who reconditions and sells a used car, and a repairman. The injured persons who were held entitled to recover against one of such suppliers include a guest passenger in the car, a pedestrian, and the driver of another car on the highway. See Ferraro v. Taylor, 1936, 197 Minn. 5, 265 N.W. 829; Trusty v. Patterson, 1930, 299 Pa. 469, 149 A. 717; Mitchell v. Lonergan, 1934, 285 Mass. 266, 189 N.E. 39; Zierer v. Daniels, 1956, 40 N.J. Super. 130, 122 A.2d 377; Jones v. Raney Chevrolet Co., 1938, 213 N.C. 775, 197 S.E. 757; Flies v. Fox Bros. Buick Co., 1928, 196 Wis. 196, 218 N.W. 855, 60 A.L.R. 357; Benton v. Sloss, 1952, 38 Cal.2d 399, 240 P.2d 575; Kaplan v. Stein, 1951, 198 Md. 414, 84 A.2d 81; Standard Oil Co. of Indiana v. Leaverton, 1946, 239 Mo. App. 284, 192 S.W.2d 681. A defective steering mechanism is analogous to a defective brake, insofar as the liability of a dealer who reconditions a used car is concerned. See Egan Chevrolet Co. v. Bruner, 8 Cir., 1939, 102 F.2d 373, 376, 122 A.L.R. 987.
The application of the "foreseeability" rule in such a situation was stated in Egan Chevrolet Co. v. Bruner, supra, as follows: "One who permits a truck with a dangerously defective steering mechanism to be used upon the public highways, not only has reason to anticipate that it will cause an accident, but may be almost certain that it will do so." Or, as stated in Ferraro v. Taylor, supra [197 Minn. 5, 265 N.W. 832], as to defective brakes: "[The rental agency] rented the car to Taylor for the very purpose of driving it upon the highway, where it was a menace to all other vehicles, and, if it had knowlelge of the facts of which it ought to have had knowledge, it knew that some accident to some other person using the highway was almost certain to result. It set in motion the very acts which it now claims should relieve it of liability. That being the case, the intervention of Taylor's negligence was insufficient to break the chain of causation."
But where the negligence of another constituting an independent intervening efficient cause of the accident, was not reasonably forseeable, it has been held that no liability may be fastened on a manufacturer or supplier. Thus, in Waterman v. Liederman, 1936, 16 Cal. App.2d 483, 60 P.2d 881, 883, a guest passenger was injured when a tire blew out and sought to impose liability upon the manufacturer of the allegedly defective tire and upon the driver for allegedly reckless driving. In holding *607 that the plaintiff had failed to make out a case against the manufacturer, the court said: "It cannot be said that the maker of the tire is bound to anticipate the gross carelessness of reckless drivers. This, of course, was not a use which the manufacturer was bound to anticipate and was not `a purpose for which it is manufactured.'" And in Stultz v. Benson Lumber Co., 1936, 6 Cal.2d 688, 59 P.2d 100, 103, in which the supplier of an allegedly defective plank used by another in the construction of a scaffold was held not liable to a painter who was injured when the scaffold collapsed, the court said:
"There is nothing stated in the text last cited [Restatement of Torts, § 388 et seq.], nor in the other authorities or decided cases which under the facts here alleged would justify the imposition upon the defendant lumber company of the burden of anticipating that the defendants Newby would be negligent, that is, that those defendants, at least after they knew of the faulty nature of the plank, would nevertheless use such a plank as a main support in the construction of the scaffolding."
The distinction between the cases cited immediately above and those involving a defective brake or steering mechanism is readily apparent. The danger from using a car in such condition was imminent; the fact that the driver might reasonably be expected to drive the car with knowledge of such defective condition  at least, until he could reach a service station or repair shop  was reasonably foreseeable. But we know of no rule that would impose liability upon a supplier or manufacturer where the intervening act or force could be foreseen only as an unusual or remote possibility. As stated in Jamieson v. Woodward & Lothrop, 1957, 101 U.S.App.D.C. 32, 247 F.2d 23, 29 (where the manufacturer was charged with failure to warn or otherwise protect the user of the article), "Reasonably foreseeable' in the rule here applicable does not encompass the far reaches of pessemistic imagination."
In the instant case, the jury could have found that Luby could reasonably have foreseen that Ziegler or his sons would operate the truck in an overloaded condition; and perhaps it could have been found that Luby was negligent in modifying the truck to increase its load-carrying capacity without advising Zeigler of the load capacity recommended by the manufacturer and warning him of the danger of overloading (although it is arguable that both of these facts should have been equally obvious to Ziegler). But the statements of the witnesses in their depositions (presumably the same as would have been given at the trial by these witnesses, who included all persons who observed the truck, the frame, the rivets, and the spring hangers following the accident, the principals themselves, and one or two experts who apparently did not observe the sheared rivets and spring hangers) showed clearly that the overloading of the truck on the built-up springs could not reasonably be found to be the sole cause of the accident. Concurring in the end result were the brake failure (or the failure of Paul Zeigler to operate the brakes properly) at what might have been an excessive speed in the circumstances, followed by some exceptional force applied to the rivets such as the sudden swerving of the truck or its impact with the plaintiff's car. Regardless of whether the jury may subsequently exonerate Paul Ziegler of negligence (as to which we express no opinion), the fact remains that, superimposed upon the negligence, if any, of Luby, were independent interviewing forces without which the accident would not have occurred. These hazards might have been foreseen by Luby as remote possibilities; but we have found no case, and none has been cited, holding that a manufacturer or supplier, or any other defendant, must "pay off" for failure to foresee a remote eventuality.
Remembering that the "product liability" doctrine is an exception to the general rule of non-liability of a manufacturer or supplier to one not in privity with him, Matthews *608 v. Lawnlite Co., supra, and that the decision in MacPherson v. Buick Motor Co., supra, by its terms applied only to injuries resulting from the use of the article itself upon the theory of "implied invitation", it would appear especially important that the courts limit the liability of the manufacturer or supplier to one who is injured while "in the vicinity of such use", as expounded in the text authorities cited previously, to cases involving an inherently and imminently dangerous defect, such as a defective brake or steering mechanism on an automobile, from which injury to an innocent bystander is not only "reasonably foreseeable" but almost certain to result. Obviously, the case at bar is not such a case, even if it be assumed that there was some negligence on the part of Luby.
It is established law in this jurisdiction that if it appears to the trial court that an asserted claim is without merit either in law or fact and nothing could be accomplished in submitting immaterial issues to a jury, then a summary judgment should be entered. Sawyer Industries v. Advertects, Inc., Fla. 1951, 54 So.2d 692; Rule 1.36(c), Fla.Rules Civ.Proc., 30 F.S.A. We think the trial judge was eminently correct in entering summary judgment in favor of Luby.
The other question argued here by plaintiffs has been considered and no error has been found.
For the reasons stated, the judgments here reviewed should be and they are hereby
Affirmed.
TERRELL, C.J., and THOMAS and HOBSON, JJ., concur.
DREW, THORNAL and O'CONNELL, JJ., concur in part and dissent in part.
DREW, Justice (concurring in part, dissenting in part).
The issue presented on this appeal is simply whether a jury could properly have found legal liability on the part of either of the two defendants involved so that it was error to enter summary judgment in their favor. The treatment accorded the law and facts in the principal opinion is both thorough and accurate, and there can be little doubt that the only reasonable view of the evidence is properly stated: That the accident, in which appellant's vehicle was struck by a truck operated by a third defendant and sold to him by appellees, was caused by a mechanical failure resulting from the application of some force, such as from sudden braking or swerving, sufficient to shear the rivets and completely detach the rear end, wheels, springs and axle, of the truck. All witnesses agreed that overloading of the truck, on built-up springs, was a contributing factor in the catastrophe.
The plaintiffs, appellants here, predicated their cause of action against the appellees upon the well established doctrine of a manufacturer's or supplier's liability to third parties subjected to risks from products unsafe for their intended use. Restatement of Torts, sec. 388. Lewis Motor Co. v. Williams, 85 Ga. App. 538, 69 S.E.2d 816. In some instances a dealer's duty to the public may not be discharged even by warning a purchaser as to defects or dangers where he knows the buyer intends to use such an instrumentality as an automobile in a hazardous condition. Bergstresser v. Van Hoy, 142 Kan. 88, 45 P.2d 855. Annotation, 99 A.L.R. 240.
The appellee Luby Chevrolet, contrary to the manufacturer's recommendations, had the truck modified in several particulars for the specific purpose of enabling the purchaser to load it to a capacity beyond the weight for which it had been designed. The acts of the driver in suddenly braking and swerving the vehicle, even if no negligence on his part is shown, did, of course, concur to produce the accident in this case. But I cannot agree that, as a matter of law, the possibility of such *609 stress or force in the course of handling a vehicle in that condition was in any sense remote or unforseeable. See Benedict Pineapple Co. v. Atlantic Coast Line R. Co., 55 Fla. 514, 46 So. 732, 20 L.R.A., N.S. 92. For the proposition that the point is ordinarily one for the jury, see also Railway Express Agency v. Brabham, Fla., 62 So.2d 713.
Upon the evidence in this case, however, the remaining appellee, Cecil & Bruce Truck Equipment Company, who actually executed the work upon the vehicle in question, clearly falls within the rule as to an independent contractor merely following the directions and specifications of an employer. In the absence of special knowledge or notice such a party assumes no liability unless there exist such obvious dangers that no reasonable man would execute the plans. Restatement of Torts, sec. 404, comment (a); Prosser on Torts, sec. 84. Summary judgment should therefore be affirmed in respect to this defendant; but as to Luby Chevrolet, it is my view that the judgment should be reversed.