No. 32,313

E. BERGSTRESSER, *Appellee,* v. J. W. VAN HOY and FRED BUMCROT, *Appellants.*

(45 P. 2d 855)

Opinion

filed June 8, 1935.

*P. E. Nulton, R. L. Letton,* both of Pittsburg, and *Douglas.Hudson,* of Fort Scott, for the appellants.

*Walter B. Patterson,* of Fort Scott, *C. O. Pingry* and *Carl Pingry,* both of Pittsburg, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by plaintiff to recover damages against defendants for personal injuries inflicted on plaintiff when struck by an automobile operated by a third person. A demurrer to the petition was overruled, and defendants appeal.

The petition alleged that defendants were engaged in buying and selling new and secondhand automobiles, and maintained and operated a garage and repair shop as part of their establishment. Merle Young, who was nineteen years old, was an employee of defendants—in what capacity, whether as mechanic or otherwise, is not stated. In December, 1932, defendants owned a Ford coupé, 1922 model. On December 18, 1932, defendants sold the automobile to Young and delivered possession to Young. On the evening of December 20 Young was driving the automobile on a street of the city of Fort Scott, and while doing so struck plaintiff and injured him.

The petition described the condition of the automobile as follows:

"The said plaintiff says that at the time the said defendants gave possession of said automobile to the said Merle Young it was in a dangerous and defective condition and in such a condition that it was dangerous to persons and property to operate the same on the public highways; that the brakes on said automobile were worn thin and would not stop the automobile when applied, and the headlights would not burn, and if burning, were not visible for three hundred (300) feet in the direction in which the automobile was proceeding, and the steering apparatus of said automobile was loose and worn and defective and in such a condition that the automobile could not be properly and effectively controlled, and the said automobile did not have a suitable horn, and a part of the footboard on the said automobile was gone, which affected the use of the brakes."

There was also a statement in the petition that the automobile was a nuisance.

The petition alleged defendants knew, or should have known, the condition of the automobile and the danger attending its operation, and contained the following:

"The said plaintiff says that at the time he was struck by said automobile

he was crossing said Third street and said automobile struck said plaintiff for the reason that the said Merle Young was unable to properly, readily and effectively control or guide or stop said automobile and was unable to see the said plaintiff in time to readily and effectively control or guide or stop said automobile and avoid striking plaintiff, on account of the dangerous and defective condition of said automobile, and said Merle Young was unable to warn said plaintiff of the approach of said automobile by reason of the fact that there was no proper horn on said automobile, or other device, with which to give warning."

The petition alleged plaintiff was struck on account of the negligence of defendants and of Merle Young, and the negligence which constituted the cause of action against defendants was specified as follows:

"That the negligence of the said defendants consisted of selling or attempting to sell and in giving possession of said automobile to their said employee, and permitting their said employee to operate said automobile in its dangerous and defective condition on the public streets and highways of said city of Fort Scott, Kansas."

The brief of plaintiff clarifies the theory of the petition by disclaiming that liability is predicated on the ground an automobile is a dangerous instrumentality *per se*, or on the ground of ownership by defendants, or on the ground of *respondeat superior*.

There is no allegation in the petition that defendant's concealed the defective condition of the automobile from Young, or failed to inform Young of the defects. There is no allegation that Young was either ignorant of or failed to appreciate the danger attending use of the automobile. There is no allegation that Young was incompetent, or unskillful, or careless, or otherwise objectionable as an automobile driver. So far as the petition discloses, defendants may have had no reason to expect that Young would drive the automobile on the city streets at night without lights and without doing anything to make operation of the vehicle reasonably safe by exercise of proper care and skill.

The transaction between defendants and Young is not definitely described. The words, "attempted to sell," have no fixed meaning, and the facts are not stated. There is nothing in the petition to show that Young did not acquire full power of control of the automobile on his own account, and since ownership by defendants is immaterial, and relation between defendants and Young affording basis for application of the rule of *respondeat superior* is immaterial, the expression may be ignored.

It is said in the petition that defendants "permitted" Young to

drive the automobile. Permission is something which may be granted or withheld, affecting conduct of another. Defendants could sell and deliver to Young, or not, as they chose. With delivery defendants lost control of the situation, and Young could do as he pleased. Defendants could then neither permit nor refuse permission to drive. Therefore, the expression in the petition can have no meaning, except that defendants supplied an automobile to Young, which he was free to drive and did drive.

It adds nothing to the allegations of the petition relating to ownership and sale of the automobile, its condition, and the circumstances and consequences of its use, to call the automobile a nuisance. The facts control, and the substance of the petition is, that because of its defective condition, use by Young of the automobile as he used it imperiled travel on the street.

While the petition does not plead the statute prescribing regulations concerning operation of motor vehicles on the highway, the petition was drawn with the statute in mind, and the statute is one basis for calling the automobile a nuisance. Pertinent portions of the statute read:

"That every automobile using any public highway of this state shall show between one half hour after sunset and one half hour before sunrise two lamps exhibiting white lights, visible at a distance of three hundred feet in the direction toward which the automobile is proceeding, and shall also exhibit a red light, visible at the rear end. . . . .

"Every such motor vehicle while in use on public highways shall be provided with good and sufficient brakes, and also with a suitable bell, horn or other signal. Any person violating the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than ten dollars ($10) nor more than one hundred dollars ($100), or be imprisoned in the county jail for not more than six months, or by both such fine and imprisonment." (R. S. 1933 Supp., 8-122.)

The penal provision of this statute applies only to one who uses the highway in violation of the statute. Manifestly, defendants could not be prosecuted for Young's act. Also, the statute establishes a standard of care for the operation of automobiles on the highway. It does not prescribe a duty to be fulfilled by a dealer who sells an automobile and then has nothing more to do with it.

There is also a statute forbidding operation of a motor vehicle by a minor under age of fourteen years, and by an intoxicated person. (R. S. 8-121.) This statute has no application to the present controversy, except it shows that Young's minority has no bearing on this case.

The liability contended for by plaintiff is that of a secondhand dealer in automobiles. In the interest of public safety he must recondition a dangerously defective car before selling it as a motor vehicle for use as such, or suffer the consequences. The liability would not, however, stop with the secondhand dealer. It would extend to an owner who turned in his car to a dealer in payment of part of the price of a new car, if the dealer sold the car, without repairing it, to a third person who injured somebody else; and this would be true, even if the dealer promised to repair before selling, and the last buyer promised to repair before using the automobile. The court declines to go that far.

Normally the secondhand dealer's duty to the person to whom he sells is to inform the buyer of the defective condition of the automobile. (Restatement, Torts, § 388.) Discharge of that duty relieves the seller of liability to the buyer, and to persons who may be injured through operation of the automobile by the buyer. If the seller should know the automobile is incapable of safe use, but is capable of being made safe for use, his duty would be discharged by giving the information relating to its condition, unless from facts known, or which he should know, the seller should realize there is substantial probability the buyer will use the automobile without remedying the defects. (Restatement, Torts, § 389 and Comment c.) In that event, turning the dangerously defective automobile over to a buyer who will likely put it to immediate use in its defective condition would resemble turning a safe automobile over to a driver known to be unfit to use it. (*Priestly v. Skourup*, post, p. 127, 45 P. 2d 852.)

It is believed the Restatement goes as far as the decisions, and fair deductions from the decisions, will permit. The court prefers to let the legislature create a new liability, if one is to exist.

The petition in this case was not framed in accordance with the theory of liability which has been indicated, and does not present the conditions upon which a secondhand dealer might be held liable. The essentials of the petition are that defendants sold Young a dangerously defective automobile, Young used it, and plaintiff was injured because of the condition of the automobile. That is not sufficient to warrant recovery from defendants by plaintiff.

The judgment of the district court is reversed, and the cause is remanded with direction to sustain the demurrer to the petition.