**POLK COUNTY MOTOR COMPANY,**
Appellant,

v.

**Friday HARRIS et al., Appellees.**

No. 6495.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 26, 1961.

Rehearing Denied Nov. 15, 1961.

McNEILL, Justice.

This case is one of venue. Appellees brought suit against appellant and O. D. Davis in the district court of Hardin County, Texas, to recover damages resulting from a trailer coming loose from a coupling on a truck as it was traveling along a highway in said county, going across the center of said highway, striking another vehicle which resulted in the death of John B. Prine and loss of an arm to appellee Harris. As pertinent to this appeal, the petition alleged that the accident happened as the proximate result of certain acts of negligence upon the part of appellant to the effect that it sold the truck to said Davis with a defective trailer hitch knowing that it would be used for the purpose of pulling a trailer on the highways, in failing to warn the purchaser that the trailer hitch was defective and in selling the truck for use upon the highways when appellant knew, or should have known, that the trailer hitch was in a dangerous condition, and in failing to properly inspect the trailer hitch and pin before delivering the truck to purchaser.

Appellant duly filed its plea of privilege to be sued in Polk County, the place of its residence. This plea was controverted under Exceptions 9a and 23 of Article 1995, Vernon's Ann.Civ.St. The facts at the hearing were substantially these: Appellant, the Chevrolet dealer at Livingston,

sold both new and used cars and trucks. On or about April 11, 1959, prior to the accident involved appellant sold a new Chevrolet 2-ton truck to one S. L. Gilder under a conditional sales contract. This contract provided that upon failure to pay any monthly installment the seller would have the right to declare the entire balance due, to repossess the truck "including any equipment or accessories thereto" and sell the same at public or private sale. After Gilder had purchased the truck he had what was known as a bolster put thereon in order to haul logs. This bolster had pipes or "stacks" welded upright thereon at the corners of the truck so as to hold the logs on, and a trailer hitch was a part of and welded to said bolster at the rear. Gilder defaulted in his payments on the truck and he and appellant's codefendant Davis, who had become interested in buying the truck, came to see appellant's manager together, and approached him with the idea of letting Davis take up past-due payments on the truck. The manager would not handle it that way. Appellant then repossessed the truck from Gilder at its place of business in Livingston where Gilder had brought it. On the day that the truck was repossessed it was sold, says appellant, under authority of the conditional sales contract at private sale to Davis, who executed another conditional sales contract of purchase. When Davis bought the truck he knew the condition the truck was in and knew the condition the bolster and trailer hitch were in. The trailer hitch was so constructed that it had two "ears", each of which was a flat extension of metal and each of which had holes so that when the front end of the coupling pole of the trailer was placed between the "ears", a coupling pin could be inserted to fasten the pole and hitch together. At the time of purchase by Davis the left "eye" was pulled out of the bolster and one of the "ears" was on and the other had broken off or had a plug torn out of it so it would not hold a pin. Davis knew of this but did not call it to the attention of appellant but he had appellant do certain repairs on the truck

for him and left the truck with appellant for this purpose. Appellant only made such repairs on the truck as Davis asked to be done.

In the meantime Davis had spoken to one A. E. Loftin at his place of business in Kountze about the purchase of a homemade Tandem trailer and he made a deal with Loftin to buy it. But he did not have the money to pay for it. Loftin sold the trailer to Davis with the understanding that appellant would finance it. Before the repairs ordered by Davis on the truck were completed, he asked the appellant to finance the purchase of the Tandem trailer and appellant agreed to if Davis could make a substantial down payment, and if the trailer was worth the amount Davis agreed to pay therefor. For the purpose of ascertaining whether the trailer was worth the money asked, appellant's agent, Lafferty, went to Kountze and looked at the trailer. About the same time the defendant Davis testified that he took delivery of the truck from appellant at its place of business in Livingston and drove it to Kountze. However, he later changed his testimony to the effect that he drove it part way and appellant's colored boy drove it the other part way to Kountze. At any rate, Davis and Lafferty reached Loftin's place of business in Kountze at the same time. After looking the trailer over Lafferty approved the transaction, made out an invoice from A. E. Loftin to O. D. Davis for "1 Tandem Homemade Trailer with Nabors New Way Springs—$1,500.00", and delivered appellant's check for that amount to Davis and returned to Livingston. Payment for the trailer by appellant and the sale of the truck to Davis were consummated about May 5, 1960. The invoice of appellant to Davis for the truck and the trailer showed that the price of the truck as $2,250 and the homemade trailer $1,500. Appellant, in turn, financed these items through G. M. A. C.

While Davis was still at Loftin's place of business he asked Loftin to inspect the trailer hitch on the truck and he found the

gap that had been broken out of one of the "ears". Both "ears" were worn some and would cause the coupling pin to be loose; in fact, with the broken ear no coupling pin would stay in place. At the time Loftin inspected the trailer hitch he asked Davis if he wanted him to replace both ears and Davis said "No, just fix the one with the gap broke out of it." Davis had Loftin to "face it out" and complete it. Later testifying of this Davis said: "I had to put might near a complete new ear on it." Loftin also pulled the left eye out of the bolster, replaced it and put a plug in it and that is all he did. Loftin then became busy with other work in the shop and Davis obtained a coupling pin and connected the truck and trailer and drove off with them, and started hauling logs. The tragic accident above mentioned happened a few days after this. It was discovered after the accident that the coupling pin had pulled out and allowed the trailer to go free.

■ Appellees contend first that appellant owed a duty not only to Davis, but to others who might travel the highways where the truck was being used to see that the trailer hitch affixed to the bolster on the truck was in good condition, and made safe for use in pulling the trailer. In support of this argument, it is claimed that when appellant repossessed the truck from Gilder and foreclosed its mortgage that it became the owner of the bolster with its defective hitch, and before it was sold for use it should have been properly repaired or replaced. Appellant takes the position that when it repossessed the truck it did not know of the bolster or trailer hitch and did not sell the bolster or trailer hitch to Davis. It says in support of this that since the bolster was easily removed and could be taken off the truck without injury to it, it did not become a part of the truck under the rules of accretion or accession. For its position it cites Star Finance Co. v. Chain Investment Co., decided by this court and reported in 146 S.W.2d 291, as well as several out of state cases. We

have read each of these and in each there was a contest between either two mortgagees, one of the vehicle and the other of the accessories or equipment, or between the mortgagee and owner of the equipment or vehicle, and in each such instance the courts hold that a mortgage upon the vehicle does not cut off the right of the mortgage on the equipment or accessories which may be removed without injury to the vehicle. We do not consider these cases controlling in the present situation, and we hold that since the conditional sales contract with Gilder gave the mortgagee the right to repossess any equipment or accessories thereto, that the sale of the truck took with it the sale of the bolster and trailer hitch. Appellant contends it did not ever take title to the truck by virtue of the repossession but under its authority in the sales contract, it sold the truck to Davis. Whether it actually took title or not we need not decide. If title to the vehicle was vested in appellant before it was sold to Davis, it acted as principal, or if repossessed but title to the truck was still in Gilder, and appellant acted under the conditional sales contract, which it was authorized to do, it acted in the sale as agent of Gilder. In either event, it would be liable for its negligence, if any, which proximately caused injury to others.

■ But we think no negligence was shown against appellant. Appellees, upon the basis of the holding in MacPherson v. Buick Motor Company, 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, would hold appellant responsible for selling the defective trailer hitch or in allowing it to go unrepaired. The MacPherson case involved a new car while the present is one involving sale of a secondhand vehicle and the trailer hitch was no doubt secondhand. The defective trailer hitch was not a latent defect. Its inadequacy was open, obvious and clear. It would not hold a pin in its condition sold by appellant. Repairs had to be made on it before it could be used to pull a trailer. This, the new owner, Davis, undertook to do. It was not shown that when appel-

lant sold the truck to Davis he was known to be reckless or careless. The vehicle and its equipment was sold to Davis by appellant without warranty or representation of any kind. Under the circumstances we think there was no showing of negligence upon the part of appellant so as to sustain venue in Hardin County under either Sec. 9a or 23 of Art. 1995. Trust Co. of Chicago v. Lewis Auto Sales, 306 Ill.App. 132, 28 N.E.2d 300; Bergstresser v. Van Hoy, 142 Kan. 88, 45 P.2d 855, 99 A.L.R. 236. The court in each of these cases cites Sec. 388 of the Restatement of the Law on Torts in support of its ruling. No Texas case has been cited on the question, and we have found none.

We think it proper to comment upon one other case emphasized by appellees in seeking to hold appellant responsible: Flies v. Fox Bros. Buick Co., 196 Wis. 196, 218 N.W. 855, 60 A.L.R. 357. There Fox Bros., in the course of their business as keeper of a garage, came into possession of a wrecked automobile. They took the car to their shop, repaired and rebuilt it so as to restore it to a usable condition. They then sold it to one Johnson, representing to him that the car was equipped with all standard equipment and in proper operating condition for use upon the streets of La Crosse. Johnson drove the car out of Fox Bros. place of business down the street and after he had gone two or three blocks he approached a standing streetcar which was taking on and letting off passengers. He attempted to stop the car when he discovered the brakes were inefficient and would not stop the car, because of which he ran into Flies causing her injuries. The brakes of the car when sold to Johnson were in bad condition. While the jury found Fox Bros. did not know of this, it found that in the exercise of ordinary care they should have known. The Supreme Court held Fox Bros. liable for the injuries. That case differs from the present in at least two important respects: first, there was no representation, either express or implied, that the trailer hitch was in good working order. It was apparent to all that the hitch, without having been repaired, was not in working order and appellant here had nothing to do or interest in the trailer that was later attached to it except to advance money in order to finance its purchase by Davis from Loftin. It made no representation as to how the trailer could be connected to the truck nor did it undertake to make any such connection. Secondly, proper brakes and proper steering apparatus are always two essentials in order to safely operate a motor vehicle, but a trailer hitch does not have anything to do with the operation of the vehicle upon which it is fastened.

The order of the trial court overruling appellant's plea of privilege is, therefore, reversed and said plea is sustained, and this cause, as to appellant, is ordered transferred to Polk County.

Rehearing Denied Nov. 15, 1961.